## Toye v. Exeter Borough School District, Appellant.

*School law—Teachers—Election of principal—Act of June 25, 1885, P. L. 175.*

1. Under the Act of June 25, 1885, P. L. 175, the board of directors of public schools have the power to elect a principal or teaching superintendent for a term of three years.

2. In an action by a principal of a public school against a school district to recover his salary after an alleged improper discharge, a written contract of employment of the plaintiff executed in the name of the directors by the president and secretary of the board, is properly admissible in evidence, where the minutes of the board show that the plaintiff was elected principal by the affirmative votes of a majority of the whole number of electors, the names of the members both for and against him being duly entered, and that his term and salary were fixed by a unanimous vote.

3. Where a teacher is dismissed for incompetency and neglect of duty, and the minutes of the board of directors show that the dismissal for these causes was by a unanimous vote, the minutes are conclusive as to the propriety of the dismissal in the absence of any charge or evidence of bad faith, or abuse of power upon the part of the board. In such a case it is error for the court to admit evidence to contradict the minutes.

Argued April 13, 1909. Appeal, No. 90, Jan. T., 1909, by defendant, from judgment of C. P. Luzerne Co., March T., 1905, No. 232, on verdict for plaintiff in case of Peter F. Toye v. The Exeter Borough School District. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Assumpsit to recover salary as a superintendent principal of schools. Before LYNCH, P. J.

At the trial the plaintiff made the following offer:

Plaintiff's counsel: I offer this contract in evidence, dated first day of September, 1903, between Peter F. Toye and the board of directors of Exeter Borough School District, signed H. Krumelbine, president of the board of directors, countersigned Charles I. Berger, secretary of the board, and also Peter F. Toye, teacher; and I desire to read it to the jury.

Defendant's counsel: We object to it being offered in evidence until it is known that the paper was executed by Henry

Krumelbine as president of the school board and counter-signed by Charles I. Berger, and until it is further shown that Krumelbine as president and Berger as secretary had the authority to enter into the contract.

The Court: Objection overruled, paper admitted in evidence, exception noted, bill sealed for defendant. [1]

Bessie Nealon, a witness for the defendant, was on the stand. when the following offer was made:

Defendant's counsel: We propose to prove by the witness on the stand that in the school term of 1903 and 1904, she was an assistant teacher in Mr. Toye's room in Exeter borough; that she taught Mr. Toye's class for about six straight weeks at the beginning of the term, and he was out of the room most of the time.

The Court: This is following up your opening to the jury, to show incompetency and neglect?

Defendant's counsel: Yes, sir.

Plaintiff's counsel: We object to the offer by this witness of anything in support of the charges upon which this board acted in discharging this teacher, and cite 145 Pa., p. 418.

The Court: Objection sustained, exception noted, bill sealed for defendant. [2]


Frank Touhill, recalled for plaintiff in rebuttal.

Defendant's counsel: What do you propose to prove?

Counsel for plaintiff state privately to defendant's counsel what he proposes to prove by the witness.

Defendant's counsel: Objected to, because it is an effort to go back of the minutes of this board and retry the case, which the courts have ruled time and again cannot be done unless they declare that through corruption and fraud the man was discharged. There is no allegation in the declaration of that kind.

The Court: The pleadings would be better if it had been set out that it was corruptly done, but we will take it. Exception noted, bill sealed for defendant. [4]

"Q. Now, Mr. Touhill, go on and state what this conversation was with Mr. McCawley, the director at that time,

concerning the dismissal of Toye. A. Mr. McCawley and I were working together and Mr. Toye and I were friendly, and Mr. McCawley told me in the afternoon of the meeting of the board that there was to be a meeting of the board that evening and Toye was to be dismissed, and asked me if I could let him know; that they were going to fire him; that was the words he used. And I told him I didn't know that I could see Toye, I didn't think that night, and I didn't get word to him until the next day after the board had had their meeting. Mr. Mc-Cawley told me the next day that the board had met and that they had discharged Toye; and I asked him why they had discharged Toye, what was the matter with him; ' Why,' he said, ' that there wasn't anything the matter with him;' I says, 'Why did they discharge him,' and he says, 'On account of politics.' 'Well,' I says, 'did you vote for him to be discharged,' and he said, 'Yes.' I says, 'How can you vote against a man when there was nothing the matter with him, if he was incompetent or if they had no charge against him why did you vote against him.' He says, 'Well, it was politics.' I said, 'I couldn't understand politics that way.' Well, he said, 'Mr. Hughes had a brother-in-law, Mr. Sullivan, that was to be elected and that in order to make room for Sullivan why Toye had to be discharged, and that he had to vote for Sullivan because Sullivan, if he didn't vote for Sullivan, Sullivan would not vote for him when he wanted to get his sister in.' Q. You mean Sullivan? A. He had to vote for Hughes' candidate, because if he did not vote for Hughes' candidate Hughes would not vote for his candidate who he says was a relative of his and wanted a position as teacher, and he said that that is why that they voted on the thing, that they had no particular charge against Toye, but everybody had their friends and they had to get them in. And I asked him was it on account of Toye being off half a day playing ball, and he said that did not enter into it at all, that it was a case of politics."

CROSS-EXAMINATION.

"Q. You knew Mr. Toye played ball with the Pittston Brothers on the team as catcher? A. Yes, sir. Q. You also

knew that during the school term he stayed away from school and played ball? A. No, sir; he didn't. Q. Why did you ask Mr. McCawley if that was not the reason? A. That was the reason he remained away for one-half day was the only day he was absent. Q. He was absent half a day from school playing ball with the Pittston Brothers? A. Yes, sir. Q. You played on that team? A. Yes, sir. Q. What relation are you to Toye? A. Pretty hard to go back; I don't know. Q. You are related though? A. No, sir. Q. Very close friends, and you were during 1903 when you played on the team? A. Not any closer than Mr. McCawley and I are. Q. That was during the school term that Mr. Toye stayed away from school to play ball, wasn't it? A. It was the last game of the year. Q. That was during the school term? A. Yes, sir." [5]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* among others were (1, 2, 4, 5) rulings on evidence, quoting the bill of exceptions.

*Abram Salsburg*, with him *W. Alfred Valentine*, for appellant.—The minutes failing to show that the act of April 11, 1862, was complied with, the action of the board as well as of the president and secretary in entering into the contract with the plaintiff for three years, was illegal and void, and should not have been admitted in evidence: Dennison Twp. School District v. Padden, 89 Pa. 395; Dyberry School District v. Mercer, 115 Pa. 559.

Where a board of directors, without acting in bad faith, dismiss a teacher for incompetency, and such action is regularly entered on the minutes of the board, the teacher cannot recover salary for the balance of the term: McCrea v. Pine Twp. School District, 145 Pa. 550; Custer v. School Dist., 12 Pa. Superior Ct. 102; Kell v. Rudy, 1 Pa. Superior Ct. 507.

*John J. O'Donnell*, with him *George F. O'Brien*, for appellee.—The motion that the principal be elected for the term of three years was carried unanimously. This minute, coupled

with the minute that all the members were present, constitutes a substantial compliance with the Act of April 11, 1862, P. L. 471; Burke v. School District, 28 Pa. Superior Ct. 16; Genesee Twp. School Dist. v. McDonald, 98 Pa. 444; Tobin v. Morgan, 70 Pa. 229.

Plaintiff's objection to Miss Nealon's testimony was properly sustained: Whitehead v. School District, 145 Pa. 418.

The testimony offered in rebuttal went to the good faith of the dismissal, as proved by the defendant. It tended to overthrow the weight and conclusiveness of the minutes of the meeting: Brown v. Finney, 67 Pa. 214; Finn v. Providence Gas & Water Co., 99 Pa. 631; Amrhein v. Clausen, 155 Pa. 93.

OPINION BY MR. JUSTICE POTTER, June 22, 1909:

It appears from the record in this case, that on July 10, 1903, at a special meeting of the school board of Exeter borough, Luzerne county, a motion was made and carried to elect a principal for the incoming year or term of school. An election being held, P. F. Toye received a majority of the votes for principal and was declared elected.

Motions were then made and carried unanimously that the principal be elected for the term of three years and that he should receive $100 per month.

On September 1, 1903, the president and secretary of the board, acting in the name of the board entered into a contract with Peter F. Toye by which he was employed as teaching superintendent of the borough schools for three years (twenty-seven months) at a compensation of $100 a month; the right of dismissal being reserved to the board "for any of the causes specified in the twenty-third section of the Act of May 8, 1854, P. L. 617, which causes are incompetency and neglect of duty." Toye was dismissed by the board at the end of the first year of his employment, upon these grounds. He alleged, however, that his dismissal was without cause, and brought suit against the school district to recover the stipulated amount of his salary for the balance of the term for which he had been engaged.

In his declaration, however, or statement of claim, he merely

set forth the contract, and averred that in pursuance thereof, he performed the duties of teacher for one year, and was prevented from continuing as such during the second year, by reason of another teacher being in control of the school as a teacher. He made no allegation in his declaration, of bad faith, or abuse of power on the part of the board of directors. The trial of the cause in the court below resulted in a verdict for the plaintiff for the full amount of his claim with interest. A motion for judgment for the defendant non obstante veredicto, was refused, and judgment was entered on the verdict. Defendant has appealed, and in the first assignment, alleges error in the admission in evidence of the contract of employment, claiming that there was no evidence of authority on the part of the president and secretary to execute any such contract. There is no merit in this assignment. The board of directors had power under the Act of June 25, 1885, P. L. 175, to elect the plaintiff for a term of three years: Burke v. School District, 28 Pa. Superior Ct. 16.

The minutes of the board meeting show that the plaintiff was elected by the affirmative votes of a majority of the whole number of directors, and the names of the members voting for and against him are duly entered on the minutes as required by the Act of April 11, 1862, P. L. 471, sec. 4. It also appears that resolutions fixing his term at three years and his salary at $100 per month were unanimously adopted. The contract executed in the name of the board by the president and secretary was in strict accord with the action of the board. While the plaintiff sues upon the written contract, his right to recover really depends upon the action of the board, of which the minutes are the best evidence. Having accepted the election and entered upon his duties, the contract was complete on both sides. The admission in evidence of the written instrument did the defendant no harm. As we have said, the plaintiff does not in his statement, allege that the board of directors acted corruptly or in bad faith, in dismissing him as superintendent. The action of the board was regularly entered upon the minutes, and in the absence of any charge by the plaintiff in his statement, of bad faith, or abuse of power

upon the part of the board, the minutes were conclusive, as to the propriety of his dismissal. This court said, in Whitehead v. School District, 145 Pa. 418, speaking through Mr. Justice CLARK (p. 429), "The Board of School Directors had the power to dismiss this teacher for incompetency, cruelty, negligence, or immorality. This power is expressly given in paragraph V, sec. 23, Act of May 8, 1854, P. L. 622, and was reserved in the contract. As a deliberative body, a board of school directors is intrusted with the government of the schools, and by the statute is empowered both to employ teachers, and for the causes stated, to dismiss them. The board, therefore, had jurisdiction under the statute to pass upon any charge of this character, and in its determination was held merely to the exercise of good faith, and was answerable only for an abuse of its powers." The rule thus laid down was repeated, and followed in McCrea v. School District, 145 Pa. 550, when it was said (557), "It would greatly impair the government and efficiency of the common schools, if the honest judgment and discretion of the board, exercised in good faith, could be reviewed and reversed by a jury. Such a policy would place the practical management and control of the schools on very precarious and uncertain ground." The present case was badly tried throughout. The only thing charged against the district was violation of the contract, without any allegation of bad faith, and in the evidence in chief of plaintiff, it was shown that he was dismissed upon the avowed ground of incompetency and neglect of duty, by the unanimous vote of the board. Under this showing, the minutes of the board were under the authorities above cited conclusive, and it was error in the trial court to permit evidence to be introduced to contradict the minutes. As Mr. Justice CLARK said in McCrea v. School District, 145 Pa. 550, "A teacher wronged in this respect, that is to say, through fraud or oppression, may seek redress by suit against the members of the board for damages. But the control and government of the schools is given to the board of directors, who have peculiar opportunities of judging, and their action, if taken in good faith, is final." The trial judge seems to have misconceived the entire situation. In the face of the evidence

introduced by plaintiff showing his dismissal upon the ground of incompetency and neglect of duty, he placed the burden of justifying its action upon the board of directors, and when the board attempted to assume this burden, improperly placed upon it, the trial judge sustained the objection of counsel for plaintiff and excluded the testimony of the witnesses for the defendant, called to prove the incompetency of the plaintiff, and his neglect of duty. The theory upon which the case seems to have been tried was entirely wrong, and the judgment is reversed.