Commonwealth ex rel. Ricapito, Appellant, *v.* Bethlehem School District et al.

Argued December 12, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-

Feld, Rhodes, Hirt and Kenworthey, JJ.

*H. P. McFadden,* for appellant.

*H. J. Hartzog,* for appellees.

Opinion by Keller, P. J., April 15, 1942:

A petition for writ of alternative mandamus was filed by the relator,[1] Joseph Ricapito, to compel the School District of the City of Bethlehem, and its officers, to draw, sign and pay warrants for his salary as a professional employe, viz., assistant principal and dean of Liberty High School, for the semi-monthly periods ending July 17, 1940 and August 2, 1940, respectively, in the sum of $151.87 each, made up of semi-monthly instalments of a yearly salary of $3520, ($146.67), plus like instalments of an alleged annual salary increment due him of $125 ($5.20).

After certain motions by the defendants, not necessary to be referred to, had been overruled, they filed a return or answer denying that, during the month of July 1940, the relator was entitled to be paid on the basis of an annual salary of $3520, or an annual in-

---

[1] The petition should have been filed in his own name rather than in the name of the Commonwealth, at his relation: Act of June 18, 1893, P. L. 345, secs. 1-4, 12 PS §1911-1914; *Com. ex rel. Short v. Woodward,* 84 Pa. Superior Ct. 124. But as it was not objected to, we shall overlook it.

crement of $125, and averring that the salary to which
he was entitled as a professional employe was $3100 a
year, or $129.16 semi-monthly, which had been paid
him; and that no salary in excess of that amount was
legally due or payable to him.

The case came on for trial before a court and jury
and after the undisputed facts had been introduced in
evidence, the trial judge directed a verdict in favor of
the relator; but, subsequently, the court in banc, in-
cluding the trial judge, entered judgment in favor of
the defendants non obstante veredicto. The relator
appealed.

The material facts may be summarized as follows:

The appellant has been an employe of the defendant
school district—a school district of the second class—
since 1927, as instructor of instrumental music, hold-
ing a teacher's contract in the form prescribed by the
School Code of 1911 (Act of May 18, 1911, P. L. 309),
until 1937. Pursuant to the 'Teachers' Tenure' Act or
Amendment of April 6, 1937, P. L. 213, he was given
a professional employe's contract to teach, in the form
prescribed by that act.

On August 16, 1938 he entered into a professional
employe's contract with the defendant school district
in the statutory form for the school year 1938-1939,
to "teach in the said school district" for an annual
compensation of $3100. He was assigned by the school
board to the performance of the duties of teacher of
instrumental music, the same as under the previous
contract.

On June 21, 1939, the administrative committee of
the school district board made, inter alia, the follow-
ing recommendations:

"13. That an assistant to the principal of Liberty
High School be appointed for the coming school year
1939-1940, who shall be designated as Dean of Liberty
High School, having exclusive charge of the discipline
in that school; and that the compensation for such

service shall be fixed at \$420 a year or \$35 per month
. . . . . .

"15. That Edward E. Wesenberg, a graduate of
Moravian College, possessing a permanent college cer-
tificate, a teacher in the public schools of Bethlehem
for a period of 20 years, be appointed for the school
year 1939-1940 Principal of Liberty High School, at
a salary of \$3000 per year; and that Joseph Ricapito,
a graduate of Lehigh University, possessing a college
permanent certificate, be appointed for the school year
1939-1940 Assistant Principal of Liberty High School
with exclusive charge of discipline and also the train-
ing and directing of the band and orchestra of that
school."

At a meeting of defendant's school board, held on
June 21, 1939 [2] the above recommendations of the ad-
ministrative committee were separately adopted by a
vote of five to three, the minutes of the board recording
the action and the names of the directors voting for
and against respectively.

On June 23, 1939, the secretary of the board wrote
Ricapito a letter (287a) stating that the board, on
June 21st "elected you assistant principal of Liberty
High School *with the title of 'dean' for the school year
1939-1940 at a salary of \$420 a year or \$35 a month"*
(Italics supplied). And in this letter enclosed for his
signature two copies of a new contract between the
President and Secretary of the Board, acting on behalf
of the Board of Directors of said School District, and
Joseph Ricapito, Professional Employe, in the form
prescribed by the Act of June 20, 1939, P. L. 482, by
which it was agreed that said professional employe
should, "under the authority of the said board and its
successors and subject to the supervision and authority
of the properly authorized superintendent of schools or

---

[2] This was the day after the amendment of June 20, 1939,
P. L. 482, to the School Code, went into effect.

supervising principal, *teach* in the said school district for a term of twelve months for an annual compensation of $3520, payable monthly or semi-monthly during the school term or year less the contribution required by law to be paid to the Teachers' Retirement Fund and less other proper deductions for loss of time." (Italics supplied). The remaining provisions of the contract were in strict accordance with the act aforesaid.

It will be seen that the salary to be paid appellant under this contract, in the amount of $3520, included the compensation to be paid him under his professional employe's contract for the year 1938-1939, $3100, secured to him under the Teachers' Tenure Act aforesaid, as well as the additional compensation of $420 provided for in the resolutions of the board for the additional duties or services imposed upon him therein.

The minutes of the board do not show that any authority was given the president and secretary to execute, on behalf of the school district, the contract in this form.

But during the school year semi-monthly payments in the amount of $146.66, (one twenty-fourth of $3520), were made to him, as appears from the payroll records of the school district.

On July 26, 1940, at a regular meeting of the board of directors of the defendant school district a resolution was adopted in due form which after reciting the resolution passed on June 21, 1939 providing for the appointment of an assistant to the principal of Liberty High School for the school year 1939-1940, to be designated, Dean of Liberty High School, having exclusive charge of the discipline in that school and fixing the compensation for such service at $420 a year or $35 a month—See Recommendation 13, supra—continued:

"And whereas this action was taken for the year 1939-1940 because of the disciplinary problems of the Liberty High School, partially arising from an enroll-

ment of 3000 pupils, including pupils from the 7th to the 12th grades, in a building intended for 1800 pupils;

"And whereas the removal of the pupils of the 7th, 8th and 9th grades from this building and the decreased school enrollment generally will reduce the enrollment in the Liberty Building to under 1800 pupils during the coming school year 1940-1941;

"And whereas the pupils attending the school will be limited to the 10th, 11th and 12th grades, as well as being much fewer in number;

"And whereas in the opinion of the Board the need for extra disciplinary supervision will no longer exist;

"Therefore, be it resolved that no assistant to the principal and dean of Liberty High School be appointed for the year 1940-1941;

"And be it further resolved that Joseph Ricapito, who was appointed to the foregoing position on June 21, 1939 at a salary of $420 per year, or $35 per month, for the year 1939-1940, be notified that his services in this capacity expired on June 30, 1940, and that his extra compensation in that behalf likewise ceased, provided further, however, that his contract as a teacher and director of the band and orchestra at an annual salary of $3100 as existing prior to said supplementary and limited work is and continues to remain in full effect and force." Notice of the adoption of this resolution was promptly given Mr. Ricapito on July 27, 1940 (See 306a), who, on July 31, 1940 wrote the board protesting against his removal from the position of assistant principal of Liberty High School and the consequent cutting off of $420 a year, paid him for such service, from his salary. The letter appears in the margin.[3]

We are of opinion that, under the undisputed evi-

_____

[3] "I have received from Mr. Frey [the Secretary] a letter dated July 27, 1940 informing me of the action of the Board of School Directors of the City of Bethlehem in which they have attempted to remove me from my position as Assistant Principal of Liberty

dence in the case, the defendant school district was entitled to an affirmance of its point for binding instructions, and that the court in banc rightly entered judgment non obstante veredicto in its favor.

The only valid professional employe's contract between the school district and this appellant for the school year 1939-1940 was that which resulted from the renewal effect of the Teachers' Tenure Act on the contract for 1938-1939, covering his employment as a teacher for an annual compensation of $3100.

His employment, pursuant to the recommendation of the administrative committee to the newly created position of assistant to the principal, or assistant principal, of the Liberty High School, to be designated as dean of Liberty High School, at an annual salary of $420, was to a "non-mandated office"—using the language of Mr. Justice DREW in *Com. ex rel. Streibert v. York School District Directors,* 339 Pa. 119, 120, 14 A. 2d 303—in that it was not included within the category of 'professional employes' [4] as defined in section 1201

---

High School and have attempted to fix my salary at $3,100.00 per year.

"I am at present the holder of a contract entered into with the School District of the City of Bethlehem, Pa., on June 23, 1939, which is a valid, subsisting agreement and fixes my base compensation at $3,520.00 per year.

"I consider the action of the Board of School Directors contrary to the Tenure Act in that I would be demoted in type of position and my salary would be reduced thereby. I respectfully inform you that I intend to abide by the agreement of June 23, 1939 and that I am at all times ready, able and willing to continue to perform my duties as Assistant Principal of Liberty High School.

Respectfully yours,
Joseph Ricapito
(Stamp: Received Aug 1 1940 Secretary's Office,
Bethlehem School Dist.)"

[4] The Teachers' Tenure Act of 1937 and its amendment of 1939, in distinguishing between 'principal' and 'supervising principal,' show no intention to include within the term 'professional

of the School Code, as amended by the Act of 1939, supra, who are specially protected by the Teachers' Tenure Act or Amendment of 1937, supra.

The fact that the resolution appointing him "assistant to the principal", or "assistant principal", of a *high school*, designated as "Dean of Liberty High School", merely added to his duties as teacher of music, (a 'professional employe'), the exclusive charge of discipline in the school, for which added service he was to receive $420 a year, shows that he was not to be classed as a 'principal', within the term 'professional employe' as defined in the act; for the minimum annual salary of a high school principal in second class school districts, who devotes one-half or more of his time to supervision and administration, is three thousand dollars, Act of May 23, 1923, P. L. 328, sec. 1, 24 PS §1168. Appellant had received notice from the Secretary of the Board, (Ex. 30) that his appointment as assistant principal, with the title of 'dean', for the school year 1939-1940, carried with it a salary of only $420 a year.

If the Secretary had prepared a contract or contracts in conformity with the action of the board, this dispute would not have arisen. Appellant, under the Teachers' Tenure Act or amendment, was entitled to a renewal of his teaching contract, executed on August 16, 1938, which entitled him to a salary of $3100 a year. The action of the board on June 21, 1939, authorized an *additional* contract, not embraced within the 'professional employes' contract prescribed by the Teachers' Tenure amendments, providing for additional duties to be performed by him, under the title, assistant to the principal, assistant principal, or dean, for which he would receive a salary of $420 a year. It was an ex-

---

employe' as a 'mandated office' an 'assistant to the principal', or 'assistant principal', or 'dean'. See *Com. ex rel. Streibert v. York School Dist.,* supra; *Com. ex rel. Hetrick v. Sunbury School Dist.,* 335 Pa. 6, 6 A. 2d 279.

periment, which might or might not become permanent, but until so determined, it was a temporary expedient, for which the school district could contract with the appellant, apart from and in addition to the 'professional employe' contract prescribed for his teaching of music; and which it could discontinue, if, in its discretion, it decided to do so: *Ehret v. Kulpmont Borough School Dist.*, 333 Pa. 518, 5 A. 2d 188. It furnished no warrant or authority to the president and secretary to prepare and execute on behalf of the board a professional employe's contract in the form prescribed by statute, fixing appellant's compensation at $3520, so as to increase his salary 'as teacher' to that amount and continue it if and when his duties as assistant to the principal or assistant principal or dean of Liberty High School should be discontinued; and the contract of June 23, 1939, not being in conformity with the action of the board duly enacted and entered on the minutes, is invalid and ineffective to the extent that it exceeded the authority so given.

We do not mean to hold that the board must give the president and seceretary express direction to execute a contract which it has legally authorized in order to give validity to the contract so signed and delivered. The cases of *Toye v. Exeter Boro School District*, 225 Pa. 236, 74 A. 60, and *Costello v. School District of Hazle Twp.*, 241 Pa. 179, 88 A. 363, expressly negative any such requirement; and the case of *Chilli v. McKeesport School Dist.*, 334 Pa. 581, 6 A. 2d 99, when rightly understood, is not in conflict with them. The Chilli case was a petition for mandamus to compel the district to *execute a contract for the erection of a building*,[5] for which the petitioner had been *awarded* the contract by the board. Mandamus may issue to compel a public officer to perform a ministerial duty,

---

[5] See *Angelotti v. Rankin Borough*, 341 Pa. 320, 323, 19 A. 2d 398.

but it cannot issue against such officer where there is any discretion to act remaining in him. The mere awarding of a school contract to the lowest bidder does not amount to a binding contract with him, and until such a contract in conformity with the board's action is executed and 'delivered by the president and secretary acting on behalf of the board, there is no valid enforceable contract. Until such contract has been signed and delivered the board may rescind its action (*Crouse v. Braddock School Dist.*, 341 Pa. 497, 21 A. 2d 72) and decide not to proceed with the building. These are matters of discretion within the province of the board. Hence, unless the board, by appropriate action has exhausted its discretion, by approving the form and terms of the contract submitted by the bidder or by authorizing and directing the president and secretary to execute that contract, mandamus will not lie to *compel its execution.* But the case does not hold that a contract executed and delivered by the president and secretary of the board, in exact compliance with previous action of the board, is invalid unless direction to execute it is specially given these officers. In any event, a building contract comes within section 312 of the School Code, as amended in 1933, P. L. 1152, 24 PS supp. §252, which provides that the president "together with the secretary, *when directed by the board,* shall execute any and all deeds, contracts, warrants to tax collectors, reports, and other papers pertaining to the business of the board, requiring the signature of the president." While contracts with professional employes are governed by section 1205, which *prescribes the form* of the contract and provides that it *shall* be executed on behalf of the board by the president and secretary; but it is implicit in the act, that the contract must be in accordance with the action of the board taken in strict compliance with the formalities prescribed by the act and duly entered on the minutes of the board.

That a contract, although executed by the president

and secretary, is not enforceable against the school district if it is not in compliance with or exceeds the action taken by the board is ruled in *Parnell v. Clymer Borough School Dist.*, 99 Pa. Superior Ct. 281 (cited with approval in *Com. ex rel. Hetrick v. Sunbury School Dist.*, 335 Pa. 6, 9, 6 A. 2d 279), which held that where the minutes of the board showed an appointment to a teaching position "at a salary of no more than the minimum for college graduates", which was $130 per month, a contract executed by the president and secretary calling for a salary of $165 per month, was invalid and could not be enforced against the school district. We said, speaking through Judge BALDRIGE: "The representatives of the board who executed the contract had the power only that was granted. They were unwarranted in changing the terms of employment as sanctioned by the board. The principle involved herein has heretofore been before our appellate courts many times, and they have uniformly held that, notwithstanding the president and secretary may have executed a contract in behalf of the board of directors, unless the action of the board *expressly authorized* the *terms* of the contract, it was not enforceable."

Two things must enter into the creation of a valid and enforceable *teacher's*, or professional employe's contract. (1) The appointment must be made and the salary fixed by the affirmative vote of the majority of all the members of the board of school directors, duly recorded on the minutes, showing how each member voted.[6] (2) A contract must be duly signed by the teacher and executed by the president and secretary on behalf of the board, drawn in strict compliance with the action taken by the board and the provisions prescribed by the School Code and its amendments: *Hawkins' Petition*, 129 Pa. Superior Ct. 453, 195 A. 761. If either of these is lacking, there is no valid, enforceable

---

[6] The Teachers' Tenure Act or amendment preserves the status of a teacher once regularly and validly appointed.

contract: (1) *Com. ex rel. Hetrick v. Sunbury School Dist.*, 335 Pa. 6, 9, 6 A. 2d 279; *Waltman v. Albany Twp. School Dist.*, 64 Pa. Superior Ct. 458; *McCandless v. Summit Twp. School Dist.*, 55 Pa. Superior Ct. 277; *School Dist. of Dennison Twp. v. Padden*, 89 Pa. 395; *Costolo v. School Dist. of Springhill Twp.*, 99 Pa. Superior Ct. 259; *Costello v. School Dist. of Hazle Twp.*, supra; *Toye v. Exeter Boro School Dist.*, supra, p. 241; (2) *Potts v. Penn Twp. School Dist.*, 127 Pa. Superior Ct. 173, 193 A. 290; *Ickes v. Costlow et al.*, 127 Pa. Superior Ct. 180, 193 A. 287; *Walters v. Topper et al.*, 139 Pa. Superior Ct. 292, 11 A. 2d 649; *Garland v. Riebe*, 78 Pa. Superior Ct. 567; *Parnell v. Clymer Borough School Dist.*, supra; *Teachers' Tenure Act Cases*, 329 Pa. 213, *(Swick v. Board of School Directors, Boro of Tarentum*, p. 239), 197 A. 344, 358.

Payments made under an invalid contract do not estop the school district from defending against the contract nor amount to a ratification of the invalid contract: *McCandless v. Summit Twp. School Dist.*, supra, p. 278; *Waltman v. Albany Twp. School Dist.*, supra, p. 468; *Walters v. Topper et al.*, supra, p. 298; *School Dist. of Dennison Twp. v. Padden*, supra, pp. 396, 398.

Hence, the fact that in drawing orders and checks for the semi-monthly payments due Mr. Ricapito, and in preparing the payrolls, the amounts due him were not carried separately and paid by separate checks, covering his services (1) as a professional employe (teacher of music) and (2) as assistant to the principal, assistant principal, or dean of Liberty High School, is of no importance as effecting any change or alteration in the legal status or relation of appellant. It was a mere matter of bookkeeping and could not serve to change his relation as respects his services in connection with the discipline of Liberty High School into that of a professional employe at an increased salary of $420.

The case of *Landers v. Board of Education of Hot*

*Springs,* 116 P. 2d 690 (New Mexico), relied on so strongly by appellant does not govern here, for our decisions do not permit the ratification of an invalid teacher's contract by the mere payment of compensation under it, in the absence of definite action by the board, taken in the manner required for the *creation* of a valid contract. Otherwise the strict requirements of the School Code could be set aside by school boards at will. See *Hawkins' Petition,* supra, p. 459; *Waltman v. Albany Twp. School Dist.,* supra, p. 469; Act of May 11, 1927, P. L. 965.

The assignments of error are overruled and the judgment of the court below is affirmed on the grounds hereinbefore stated.