Pittsburgh School District Appeal.

Argued October 8, 1946; reargued January 7, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*N. R. Criss,* for appellant.

*Marjorie Hanson Matson,* with her *J. Alfred Wilner,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 29, 1947:

The long and checkered history of this controversy, which is concerned with the status of a public school teacher in Pittsburgh and is here on appeal from the Superior Court, begins in 1931. In that year John B. Melvin, a resident of the State of Illinois, applied for a teaching position in the "Commercial Department of the Pittsburgh Public Schools." At that time all com-

mercial subjects, generally speaking, were included in the junior high school curriculum. At a meeting of the Board of Public Education of the Pittsburgh School District on September 22, 1931 the Superintendent of Schools submitted a report recommending that "the following named persons be elected to the positions named below"; on the list was "John B. Melvin . . . Teacher, Allderdice Junior High School, at a salary of $1,800.00, . . . new position." The recommendations were adopted by a resolution of the Board which was duly recorded in the minutes.

Melvin accepted his appointment and was assigned to the teaching of arithmetic and bookkeeping in the lower grades of the Allderdice School, which is one of a number of high schools in Pittsburgh that include all grades from the seventh to the twelfth inclusive; such schools are commonly, though perhaps not officially or legally, known as "Junior-Senior High Schools," the seventh, eighth and ninth grades being regarded as junior high school grades and the tenth, eleventh and twelfth grades as senior high school grades. At some later period the commercial subjects taught by Melvin were transferred, as a result of changes in the curriculum, from the lower to some of the higher grades and he continued to teach the same subjects in those higher grades. On June 6, 1938 he made application to the Superintendent of Schools for a senior rating; he was on the eligible list for such a promotion but at that time there was a surplusage of teachers in the "senior" high schools and his application was not acted upon.

On November 26, 1941 Melvin wrote to the Secretary of the Board asserting that he was entitled to a salary of $3200 per year, which was the amount to which he would have been entitled had he obtained the senior rating. On November 29, 1941 he was transferred by the Superintendent of Schools to the Herron Hill Junior High School. Claiming that this was a demotion, he

demanded of the Board a hearing in accordance with the Teachers' Tenure Act; this being refused he appealed to the Superintendent of Public Instruction who directed that the Board grant him such a hearing; an appeal by the Board to the Court of Common Pleas from this order of the Superintendent was quashed on the ground that the order was interlocutory and non-appealable. Thereupon the Board held a hearing and made a finding that Melvin's transfer to the Herron Hill Junior High School did not constitute a demotion. He appealed again to the Superintendent who reversed the Board; the latter appealed once more to the Court of Common Pleas which sustained the appeal and reversed the decision of the Superintendent. Melvin then appealed to the Superior Court which reversed the Court of Common Pleas and reinstated the order of the Superintendent of Public Instruction (159 Pa. Superior Ct. 328, 48 A. 2d 108).

The Act of April 7, 1925, P. L. 166, section 1, amending section 1701 of the School Code of May 18, 1911, P. L. 309, provides that "Any high school giving work for the seventh, eighth, ninth, tenth, eleventh and twelfth years . . . shall be designated a six-year high school. Any high school giving work for the ninth, tenth, eleventh and twelfth years . . . shall be designated a four-year high school. Any high school giving work for the ninth, tenth and eleventh years . . . shall be designated a three-year high school. Any high school giving work for the ninth and tenth years . . . shall be designated a two-year high school. Any school giving work for the seventh, eighth and ninth years, or for the seventh, eighth, ninth and tenth years . . . shall be designated a junior high school." The Act of March 12, 1929, P. L. 18, amending section 1210 of the School Code, provided that in districts of the first class the minimum annual salary of junior high school teachers should be $1800 with a minimum annual increment of

$175, the minimum number of increments to be six; the minimum annual salary of high school teachers should be $1800 with a minimum annual increment of $175, the minimum number of increments to be eight.

Melvin's claim is based upon the contention that, having been appointed to the Allderdice High School, which is a six-year high school within the definition of the statute, he was entitled to have his salary increased by eight and not merely six annual increments. It must be emphasized at the outset that his rights are dependent entirely upon the terms of his original appointment and that the mere fact that he came to teach subjects in the upper grades of that school, whether through assignment by the Superintendent of Schools or other administrative officer, did not entitle him to any other position or greater salary than that to which he was appointed by the Board. The finances of the public school system are administered solely by the Board of Public Education; that body has exclusive control of the budget and it has the duty of fixing an annual tax rate necessary to meet that budget. Neither the Superintendent of Schools nor any other school official has any legal power or authority, by assigning teachers to any particular grades, classes or schools or by any other action or method whatsoever, to effect a promotion of a teacher which involves an increase in salary, without the consent of the Board. It is true that in section 403 of the School Code, which provides that the affirmative vote of a majority of the members of the Board shall be required to take action on certain enumerated subjects, the appointment and the dismissal of teachers are included in the list but nothing is expressly said in regard to promotions. However, this court held in *Simmler v. Philadelphia*, 329 Pa. 197, 202, 198 A. 1, 3, that a *demotion* is, in reality, a removal from one position and an *appointment* to a lower one; by the same token, a *promotion* is really a surrender of one position and an

*appointment* to a higher one. Moreover, the list catalogued in section 403 of the subjects requiring action by the Board does include the fixing of salaries or compensation of teachers, and therefore any promotion which involves a change in salaries or compensation can be validly effected only with the approval of the Board, which must be properly recorded. The action of the Board is the basis of all liability that may be imposed upon the School District; (cf. *Spigelmire v. North Braddock School District,* 352 Pa. 504, 507, 508, 43 A. 2d 229, 230; *Waltman v. Albany Township School District,* 64 Pa. Superior Ct. 458; *Parnell v. School Board of Clymer Borough,* 99 Pa. Superior Ct. 281, 285; *Commonwealth ex rel. Ricapito v. Bethlehem School District,* 148 Pa. Superior Ct. 426, 436, 437, 25 A. 2d 786, 791, 792; *Strine v. Upper Merion Township School District,* 149 Pa. Superior Ct. 612, 27 A. 2d 552).

We are relegated then to the question: What was the position to which Melvin was appointed in 1931? The terms in which his appointment was expressed were certainly ambiguous; at least there was inherent in them a *latent* ambiguity. The appointment was to the position of "Teacher, Allderdice Junior High School." The Board contends that, whatever the official classification of the Allderdice School under the statute, it consists in reality of both an Allderdice Junior and an Allderdice "Senior" High School, and that the appointment to the Allderdice *Junior* High School was therefore well recognized and understood to be an appointment as a junior high school teacher. Melvin, on the other hand, contends that there *is* no Allderdice *Junior* High School; if that contention were to be given its full implication it would necessarily lead to the conclusion that the appointment, being to a non-existing institution, was wholly invalid and of no effect. In the brief presented by Melvin's counsel it is stated that "there is no such thing as Allderdice *Junior* High

School," and it is urged that the word "Junior" should be disregarded and the appointment regarded as if it said merely: "Teacher, Allderdice High School." But might not the Board of Public Education, with equal plausibility, italicize the word "Allderdice," and, agreeing arguendo that "there is no such thing as *Allderdice Junior High School*" urge that the word "Allderdice" should be disregarded and the appointment regarded as if it said merely: "Teacher, Junior High School"? We are informed that in recent years appointments by the Board have been simply as junior or as senior high school teacher, leaving the assignment to a particular school to be made by the Superintendent of Schools, there being nothing in the law which requires such assignments or any re-assignments to be made or approved by the Board; such form of appointment is obviously a more satisfactory one than that here employed. If one receiving an appointment as a junior high school teacher should be assigned to a "senior" high school position he would, of course, have the right to refuse to accept such an assignment on the ground that his appointment would not enable him to receive the compensation designated by the statute for the position to which he was being assigned.

It is obvious that in the present case one of two possible interpretations must be placed upon Melvin's appointment in the terms in which it was expressed. Was the appointment one to a Junior High School with the word "Allderdice" included merely by way of an assignment (which Melvin might have refused to accept unless given a "Senior" High School appointment)? Or was the appointment one to the Allderdice High School, a six-year high school, and therefore a "Senior" High School appointment, with the word "Junior" included merely as the result of a misunderstanding on the part of the Board as to the real nature of the Allderdice School? It is well established that an appointment

by a School Board cannot be enlarged, diminished, supplemented or in any manner changed by evidence extraneous from the minutes, or by the actions or declarations of the officials of the School District: *Commonwealth ex rel. Hetrick v. Sunbury School District,* 335 Pa. 6, 9, 10, 6 A. 2d 279, 281; *Potts v. Penn Township School District,* 127 Pa. Superior Ct. 173, 179, 193 A. 290, 293; *Strine v. Upper Merion Township School District,* 149 Pa. Superior Ct. 612, 619, 27 A. 2d 552, 555. We are here concerned, however, not with any changing or supplementing, but with the necessity of *interpreting* the terms of the appointment as recorded in the minutes of the Board, and which, because of their latent ambiguity, cannot all be given effect. In performing that task of interpretation the principal and most promising avenue of inquiry to be explored is obviously the interpretation which the Board and Melvin himself placed upon the appointment, both at the time it was made and subsequently. As far as the Board is concerned, it has consistently taken the position that it was only a junior high school appointment; it stresses the fact that any other interpretation would involve, when applied generally, an alarming increase in its budget which it never contemplated nor provided for. Its Director of Personnel testified that there exists a general practice "when a teacher enters the Pittsburgh system as a high school teacher he comes in through the junior high school salary schedule, and, after a residence in Pittsburgh of a sufficient number of years, plus his academic and professional qualifications, plus his ratings by supervisors, principals and the Department of Personnel, and an over-all picture as to his value to the community and the Pittsburgh school system, he is given a placement on the eligibility list" [for promotion to a senior rating]. But, what is more important, Melvin himself apparently did not consider that he had obtained an appointment as a "senior" high school

teacher. When, in 1938, the matter evidently presented itself to his mind, because at that time the two additional increments of a "senior" high school teacher would have begun to accrue, he made no claim or demand for such increments but, on the contrary, applied for a senior rating, and it was not until 1941, ten years after his appointment, that for the first time he asserted the position which he now assumes. That he is admitted by the Board to be "an able, meritorious and conscientious teacher," and that he has been willing to teach in the higher grades without having received a senior rating, are factors which are here irrelevant. Recourse must be had to the legislature for clarification and amendment of the existing statutes if equal compensation ought to be provided for all who teach in identical grades irrespective of the nature and extent of the school organization of which those grades may form a part. In the present case the point is that Melvin's ambiguous appointment, when properly interpreted, is found to have been an appointment as a junior high school teacher, and he was never given by the Board of Public Education any other or higher status; his transfer, therefore, to the Herron Hill Junior High School was not a demotion.

The judgment of the Superior Court is reversed and the order of the Court of Common Pleas of Allegheny County reinstated and affirmed; costs to be paid by the School District of Pittsburgh.

Mr. Chief Justice MAXEY and Mr. Justice JONES filed dissenting opinions.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE MAXEY:

I concur in Mr. Justice JONES' dissent and I wish to point out what I think is the basic fallacy in the majority opinion, to wit: that the *words* of the resolution in which the employment of John B. Melvin had its genesis determined his employment status *without*

*reference to the School Code* which is in fact and in law the controlling factor in this problem. It is clear to me that the teaching work Professor Melvin was officially employed to do and the kind of school in which the Board directed him to do it determined, under section 1701 of the School Code, his employment status. That section reads as follows: "Any high school giving work for the seventh, eighth, ninth, tenth, eleventh and twelfth years of not less than one hundred and eighty days in each year, and conforming to the regulations established by the Department of Public Instruction, and having at least five properly qualified teachers shall be designated a six-year high school."

Professor Melvin having been assigned to a teaching position in the Taylor-Allderdice school was by that fact placed in the status of a high school teacher and was entitled to the benefits of the salary provision of subsection 2 of section 1210 of the School Code. I agree with the Superintendent of Public Instruction in his official opinion as follows: "From the standpoint of actual teaching service he [Melvin] was, therefore, a teacher of senior high school rank and in view of that fact and the fact that a secondary school of six years is by law defined as a six-year high school and not as a junior high school or as a junior-senior high school, we must conclude that for salary purposes as well as for teaching service, the appellant was a 'high school teacher' and consequently was entitled to a continuance of salary increments until he had attained the top of the regular salary schedule for Pittsburgh high school teachers, namely $3200, instead of being limited to the maximum of $2850 provided for junior high school teachers in the City of Pittsburgh."

The record conclusively shows that the Taylor-Allderdice High School to teach in which Professor Melvin was chosen, was a "high school" embracing grades 7B through 12A under the Code is a six-year high school.

Dr. Whitney, Associate Superintendent of Schools in charge of Secondary Education, testified as follows: "The Taylor-Allderdice Junior-Senior High School is what is known as a six-year high school, embracing grades 7B through 12A." This testimony is not contradicted. The Board of Education of Pittsburgh had no authority whatever to term that high school a "Junior High School" or to classify it as such. Since this classification of the high schools of the Commonwealth is the *exclusive* function of the Department of Public Instruction, local school boards cannot nullify or modify that official classification. Under section 1007 of the Code (Act of May 18, 1911, P. L. 309, section 1007, 24 PS 910), the Superintendent of Public Instruction is directed to classify schools. That such classification is to be made independently of any determination by a local school board as to the class into which a particular school falls is indicated by the requirement of the School Code that the Superintendent of Public Instruction classify high schools upon the basis of the prescribed reports of the school directors and of the State inspectors of high schools in accordance with the provisions of the School Code, and this classification is binding upon the Court: *School District of Borough of Falls Creek v. School District of Washington Township,* 114 Pa. Superior Ct. 380, 174 A. 634; *School District of City of New Castle v. School District of North Beaver Township,* 141 Pa. Superior Ct. 401, 14 A. 2d 855.

Judge RENO, speaking for the Superior Court, correctly analyzed this problem and solved it when he said "no argument is required to demonstrate that a school district cannot evade statutory obligations by calling a junior high school that which the law classifies as a high school." In other words, an *obvious misnomer* in any contract or resolution of employment is of *no weight* when in an issue as to the identification of a person or a place or a school referred to in that contract

it is *opposed* to a *legally established fact.* Professor Melvin's status as a teacher under the School Code was fixed by his election as a teacher in what the Superintendent of Public Instruction officially classified as a "high school," to wit: The Taylor-Allderdice High School * in the City of Pittsburgh. As a teacher in *that* school Professor Melvin became entitled under the School Code to a minimum of eight successive annual increments of $175 in salary. *That which the law of this Commonwealth gave him the school district had no authority to deprive him of.* As Mr. Justice HORACE STERN, speaking for this Court in *Wilds et al. v. McKeesport City School District,* 336 Pa. 275, aptly said: "It is of paramount importance that municipal and school authorities should be held to strict compliance with legal requirements in the transaction of public affairs."

I would affirm the judgment of the Superior Court on the opinion of Judge RENO.

DISSENTING OPINION BY MR. JUSTICE JONES:

I should affirm the order of the Superior Court on the basis of Judge RENO'S able opinion which, to my mind, appropriately and correctly applies the controlling statutory law pertinent to the questions raised under the material facts of this case, none of which are in dispute.

The case is concerned exclusively with the interpretation and application of relevant statutes and not with the construction of an individual arrangement or agreement between Melvin and the School Board, as the opinion for the majority of the court seems, in effect, to conceive.

If the facts concerning Melvin's appointment by the School Board as a teacher for the district be given due effect in their true chronology and proper relation, there

---

* Taylor-Allderdice is actually operated as *one* school, with *one* principal, *one* administrative set-up, and as *one* unit.

is no "ambiguity" such as the majority sense. A general statute of the State (Act of May 18, 1911, P. L. 309, Article XII, section 1210, cl. 2, and Article XVII, section 1701, as amended, 24 PS 1165 and 1581) and the established salary schedule of the school district automatically answer the question which this appeal poses; and the answer is the same as that which Honorable Francis B. Haas, Superintendent of Public Instruction for the Commonwealth, gave (Record, 20a et seq.) in a thorough and well-considered written opinion in this very case on the same facts now before us.

But, even if there was ambiguity in the terms of Melvin's original employment by the School Board, the dispute which subsequently arose (and is here involved) is not to be resolved on the basis of the conduct of the parties. The rule to latter effect, which has applicability upon a judicial construction of a doubtful or uncertain private contract, has no place in the determination of the relation between an administrative appointee of a municipality or a political subdivision and his appointor. The rights of respective parties so circumstanced are to be decided according to the general law applicable regardless of what either or both of them may have demonstrated to be their individual understandings in such regard. The conferring or withholding of rights issuing from the public is not subject to influence from private accord or acquiescence. Obviously, therefore, "the interpretation which the Board and Melvin himself placed upon the appointment" is *not* "the principal and most promising avenue of inquiry. . .".

Melvin, moreover, was at all times alert to reserve to himself whatever rights he had in the matter. [1] And,

---

[1] For example, see Melvin's letter to the Board (Exhibit D, Record, 133a) : "I hereby advise you that by accepting a lesser amount I do not waive my contractual or other legal rights. I reserve to myself the benefit of any decision rendered in any suit involving the question of salaries for teachers in my proper classifi-

it is hardly fair now to impale him for not having made a "claim or demand for such increments . . . until 1941, ten years after his appointment" when the controversy could not and, therefore, did not arise until 1939 upon his becoming eligible, according to his contention, for the *seventh* [2] increment. Then was the first occasion for the Board's making known its opposite view which it did by refusing to recognize Melvin's claim. Nor was his application in 1941 "for a senior rating" inconsistent with his contention. Had he not been advised that such a course would afford an expeditious "out" for all concerned from the impasse at which they had arrived?

Continuing the irrelevant *private contract* analogy, the majority opinion states that "It must be emphasized at the outset that his [Melvin's] rights are dependent entirely upon the terms of his original appointment and that the mere fact that he came to teach subjects in the upper grades of that school, whether through assignment by the Superintendent of Schools or other administrative officer, did not entitle him to any other position or greater salary than that to which he was appointed by the Board". In my opinion that statement is utterly without merit.

Granted that Melvin's election as a teacher of the school district, as evidenced by the Board's minute of September 22, 1931, fixed his position as that of a junior high school teacher in the Taylor-Allderdice (six-year) High School, under existing law the appointment

---

cation." And, again, his further letter to the Board (Exhibit F, Record 135a-136a), as follows: "My action in reporting for work at Herron Hill Junior High School in accordance with orders from Dr. Graham is not to be construed as an acceptance of the demotion nor is it to be construed as a waiver of any rights I may have as a teacher in a high school."

[2] A junior high school teacher is entitled to six increments. In Melvin's case his right to a sixth had not accrued until the 1938-1939 school year so that the increments paid him were yet the same for both a high school teacher and a junior high school teacher.

was but for a year. Assuming further, however, that Melvin's status as a teacher, so created initially, must be presumed to have continued to exist under his subsequently recurring annual elections by the Board, the time came (May 4, 1937) when Melvin and the Board entered into the "professional employe" contract (Melvin's first contract), required by the Teachers' Tenure Amendment of April 6, 1937, P. L. 213, 24 PS 1126. By that contract (Exhibit C, Record, 130a et seq.), Melvin agreed with the Board to "teach in the said school district for a term of ten months, for an annual compensation of $2675.00, . . . [i. e., the $1800 base pay plus five increments then accrued to Melvin's credit] . . . with the right of The Board of Public Education to increase the compensation over the compensation [t]herein stated, from time to time, as may be provided under the provisions and proper operation of the established salary schedule, . . ."

What, then, was Melvin entitled to as compensation for his teaching services? The "professional employe" contract made no mention of whether Melvin was a "high school" or a "junior high school" teacher and, likewise, made no reference whatsoever as to where he was to teach, except that he was to teach "in the said school district". Yet, the contract contained everything that the Act of 1937 prescribes for exclusive inclusion in such a contract. The fact is that in the year 1937 Melvin was teaching senior high school grades entirely when his "professional employe" contract of May 4, 1937, was executed and he continued thereafter so to do until he was summarily transferred to the Herron Hill Junior High School on November 29, 1941, by the school superintendent as the latter's curt and devastating response to Melvin's polite letter of three days before (November 26th). He had thereby informed the Board that, under the law (section 1210 of the School Code), he was entitled to the eight increments due a high school teacher of his period of service, as indeed he was. If

that was not in accordance with what the relevant statutes provide, on the basis of the salary schedule, then I fail to understand plain language. But, if so, I am not alone. The excellent opinion of the Superintendent of Public Instruction of the Commonwealth on Melvin's appeal concludes with the following: "From the standpoint of actual teaching service he was, therefore, a teacher of senior high school rank and in view of that fact and the fact that a secondary school of six years is by law defined as a six-year high school and not as a junior high school or as a junior-senior high school, we must conclude that for salary purposes as well as for teaching service, the appellant was a 'high school teacher' and consequently was entitled to a continuance of salary increments until he had attained the top of the regular salary schedule for Pittsburgh high school teachers, namely, $3200, instead of being limited to the maximum of $2850 provided for junior high school teachers in the City of Pittsburgh".

We took this case on appeal from the Superior Court because of its possible seriousness to the school district of Pittsburgh. The Board's petition for leave to appeal represented that if the decision of the Superior Court were to stand, the additional and unanticipated cost to the school district for like claims on the part of high school teachers would aggregate $517,000. While that was, of course, neither here nor there as regards the merit of Melvin's claim, yet, being a matter of potentially large public concern, it did seem that our further review of the matter was not unwarranted. But, the large figures dropped out of the estimate at the oral argument of the appeal. Upon invitation at bar, counsel for the Board declined to hazard even an approximation of the prospective cost to the school district from an affirmance of the Superior Court's order. Anyway, if existing statutes have placed the school district in an unbearable financial situation, that condition will not

be cured nor will it be alleviated in the slightest degree by disregarding the legal rights of a faithful employee of the district. In the Board's resolution dismissing Melvin's complaint against his peremptory transfer from a six-year high school, the twelve directors present unanimously resolved that ". . . no charge warranting the termination of the professional employee's [i. e., Melvin's] contract has ever been made or could be made . . . ; on the contrary, [Melvin] was and is an able, meritorious, and conscientious teacher, and his contract is in full force and effect [sic] . . ." Or, should be, I might add. In the light of the above, the Board's seemingly cavalier treatment of his complaint is all the harder to understand.