## Antel v. McDonald School District

*Robert L. Ceisler*, for plaintiff.

*Joseph C. Ralston* and *Thomas L. Anderson*, for defendant.

CARSON, J., August 22, 1949.—Plaintiff in an action in assumpsit seeks to recover from defendant school district $2,150 salary alleged to be due him for the school year 1947-48, notwithstanding the fact that he did not teach for defendant that year.

At the close of plaintiff's testimony, defendant moved for a compulsory nonsuit which was granted. Plaintiff filed a motion to lift the compulsory nonsuit, which motion is the subject of the instant argument.

Defendant is a school district of the fourth class conducting a small high school with only one shop teacher. The course in general shop was taught prior to the war, but in 1942 the shop teacher left for other employment. It was impossible then to secure a professional employe with the proper qualifications. This condition was general, hence acts of assembly were passed, and rulings were made by the Pennsylvania Department of Public Instruction authorizing the lowering of the qualifications of teachers during the war in order to secure teachers. Plaintiff, a former teacher without the required professional certificate, was then operating a farm in the neighborhood and was solicited to assist with the teaching in the emergency. He has made a real effort to improve his educational qualifications and did acquire certificates to teach additional subjects. Unfortunately he was not able to secure the required credits to become an accredited professional employe.

Plaintiff was employed by defendant for the school year 1946-47 and not having tendered a written resignation and having been notified that his services were

no longer required, claims that he was automatically reëmployed for the school year 1947-48, under the provisions of the Teachers' Tenure Act of April 6, 1937, P. L. 213.

Plaintiff was originally employed by defendant at the beginning of the school year 1942-43, as a substitute teacher and such service as he furnished thereafter was rendered in pursuance of the original hiring. Through inadvertence on the part of the school district officials a formal teacher's contract was tendered to and executed by plaintiff for the year 1946-47. The mere signing of such contract did not alter plaintiff's status as a "substitute" teacher. He had only a temporary certificate as a teacher of general shop work, which certificate was recognized only until the expiration of the war emergency or until a duly qualified teacher of such subject was secured.

Plaintiff was hired at the beginning of the school year 1942-43 without a signed written contract, with the approval of the Washington County Superintendent of Schools, to fill a vacancy caused by the resignation of the professional employe regularly filling such position. Plaintiff was not then and has not since become a permanently certified teacher of general shop work. The officers of the school district did encourage plaintiff to try to qualify himself to secure the necessary permanent certificate to entitle him to remain as a "professional" employe under the School Code, but plaintiff has been unable to secure such certificate and therefore never qualified to execute the contract so inadvertently signed. Plaintiff had a permanent teacher's certificate limited to teaching graded school and carpentry work. Plaintiff has since acquired additional certificates to teach in limited fields of electricity, wood and sheet metal work, but has not secured the necessary certificate to secure the approval of the Washington County Superintendent of

Schools and of the Pennsylvania Superintendent of Public Instruction, to certify as a fully qualified teacher of general shop work.

Plaintiff was continued as a substitute teacher during the years 1943-44, 1944-45, and 1945-46. Such employment together with the increases in salary were authorized and approved by the Washington County Superintendent of Schools and the Pennsylvania Superintendent of Public Instruction. At the end of the school year 1946-47 defendant school district was finally able to secure and employ a fully certified and accredited teacher of general shop. At the close of the 1946-47 school year, plaintiff's duties as a substitute teacher were terminated as provided by law. Plaintiff could not have lawfully entered into a binding contract within the meaning of the school code of Pennsylvania to teach general shop for the reason that he was not qualified, certified, or accredited as such teacher.

The legislature classifies the teaching profession into "professional employes," "temporary professional employes", and "substitute" employes. The effort to improve the standards of the teaching profession has brought frequent amendments to the School Code of May 18, 1911, P. L. 309. The employment of teachers is regulated by section 1201 of the School Code of May 18, P. L. 309, 24 PS §1121. The amendments of 1937, 1941, 1943, 1945, and 1947 reflect the considered judgment of the school authorities of Pennsylvania and of the legislature. The raising of the educational qualifications of the teaching profession has been strenuously opposed by some of the teachers lacking such qualifications. The numerous cases instituted in the courts and carried to the appellate courts evidence this struggle.

The absence of many of the qualified teachers while engaged in military service or employed in war industries, so depleted the supply of available professional

employes, that the legislature in order to secure the best possible teachers available, authorized the directors of the school districts with the approval of the county superintendent and of the Superintendent of Public Instruction, to employ substitutes to fill bona fide vacancies until accepted qualified teachers could be obtained. Such emergency teachers were classified as "temporary professional employes" or "substitute" teachers. A "temporary professional employe" is defined as "any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal." Plaintiff is now attempting to raise his original employment from "substitute" to "temporary professional employe". If plaintiff had been a "temporary professional employe" he would have had to comply with the code, sec. 1201, in an endeavor to secure classification as "professional employe". Plaintiff's attempt to classify himself as a "temporary professional employe" and now entitled to status of "professional employe" has failed, because he has not been able to obtain the necessary credits and certificate. Neither the schools which he has attended, nor the county superintendent, nor any other official is authorized to issue certificates to plaintiff to entitle him to the professional certification because he has not acquired the necessary qualifications.

The legislature and school officials, foreseeing the termination of the war would return many qualified teachers to their profession and also would release many who were engaged in war work from such temporary employment, fixed a time limit during which the school districts might employ those without "professional employe" qualifications, and this time limit expired on June 30, 1949. This limitation of time

and the definition of the word "substitute" is of statutory origin:

Section 1201, 24 PS §1121:

"The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the said regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent, or who has been employed with the approval of the district or county superintendent and of the Superintendent of Public Instruction until the thirtieth day of June, one thousand nine hundred forty-nine to fill a vacancy until an acceptable qualified teacher can be obtained. Until the thirtieth day of June, one thousand nine hundred forty-nine, reimbursement shall be made by the Commonwealth to the school districts for substitutes employed in positions where vacancies exist."

This enactment authorized the school board with the approval of the county superintendent and the Superintendent of Public Instruction during the emergency to employ on a temporary basis, as a "substitute" an individual who was neither a "professional employe" nor a "temporary professional employe". The qualifications of such substitutes has been left to the discretion of these officials.

The School Code does not give such substitute the benefit of the Teachers' Tenure Act. The reason is obvious. The purpose of the Teachers' Tenure Act was to raise the standard of the teaching profession by requiring the teachers to secure additional and higher education and when having expended much time and money in securing such qualifications, to protect them in the positions thus secured. There is no reason why substitutes who do not acquire such higher qualifica-

tions should be protected in positions for which they have only limited qualifications. If such protection were granted substitutes, the good being accomplished by the Teachers' Tenure Act would be nullified. If substitutes can become permanent employes without securing the approval of the county superintendent of schools and without the approval of the State Superintendent of Public Instruction, then the Teachers' Tenure Act might as well be repealed. It does appear that when this particular plaintiff came out of retirement and offered his services to defendant school district, that he has made a commendable effort to improve his rating and qualifications, but it is unfortunate that he was not able to meet the required standards.

Plaintiff recognizes the principles of law frequently enunciated by the appellate courts, particularly in the case of the Pittsburgh School District Appeal, 356 Pa. 282, where the court held:

"It must be emphasized at the outset that his rights are dependent entirely upon the terms of his original appointment. . . . The action of the Board is the basis of all liability that may be imposed upon the School District; (cf. Spigelmire v. North Braddock School District, 352 Pa. 504, 507, 508, 43 A. 2d 229, 230; Waltman v. Albany Township School District, 64 Pa. Superior Ct. 458; Parnell v. School Board of Clymer Borough, 99 Pa. Superior Ct. 281, 285; Commonwealth ex rel. Ricapito v. Bethlehem School District, 148 Pa. Superior Ct. 426, 436, 437, 25 A. 2d 786, 791, 792; Strine v. Upper Merion Township School District, 149 Pa. Superior Ct. 612, 27 A. 2d 552). . . .

"It is well established that an appointment by a School Board cannot be enlarged, diminished, supplemented or in any manner changed by evidence extraneous from the minutes, or by the actions or declarations of the officials of the School District: Commonwealth ex rel. Hetrick v. Sunbury School District, 335 Pa. 6, 9, 10,

6 A. 2d 279, 281; Potts v. Penn Township School District, 127 Pa. Superior Ct. 173, 179, 193 A. 290, 293; Strine v. Upper Merion Township School District, 149 Pa. Superior Ct. 612, 619, 27 A. 2d 552, 555."

In order to escape the law so clearly laid down, plaintiff argues that there was ambiguity in the resolution of August 20, 1942, which required interpretation by the subsequent actions of the board of directors. In the Pittsburgh School District case the court pointed out that the language used by the school board in the appointment of the teacher was ambiguous. His employment was described as a "new position", whereas in the instant case plaintiff has offered in evidence the minutes of the meeting at the time plaintiff was employed which read: "By motion of Mr. Morehead, seconded by Mr. Allison, Mr. Harry Antel was elected as a substitute teacher in the shop. The salary was to be determined later, depending upon the degree of certification he would be able to obtain. The vote was 'Aye' by Allison, Morehead, Charlier and McCartney." Thus plaintiff was elected as a "substitute" teacher. Article 12, sec. 1121 of the School Code defined the word "substitute" with particularity and made "substitute" one of the three classifications of employes; defendant school board aptly used the word "substitute"; there is no ambiguity and no occasion to change the meaning of the word so completely defined by the legislature.

We have read the numerous reported cases wherein "teachers' contracts" of employment have been reviewed by the courts, and we are of the opinion that the only liability incurred by the school board and the only right obtained by plaintiff was in the action taken by the board of school directors of defendant school district on August 20, 1942, as shown by the minutes, to wit, that plaintiff was employed as a "substitute" teacher within the meaning of the School Code. There

has been no subsequent action taken by the school board to change in any manner plaintiff's classification. In addition to the cases before referred to, see Costello v. School District, 241 Pa. 179; Addis v. City of Pittsburgh, 85 Pa. 379; Cascade School District v. Lewis School District, 43 Pa. 318; Ickes v. Costlow et al., 127 Pa. Superior Ct. 180; Costolo v. School District of Springhill Township, 99 Pa. Superior Ct. 259; McCandless v. Summit Township School District, 55 Pa. Superior Ct. 277.

The purpose of the Teachers' Tenure Act is the maintenance of an adequate and competent teaching staff for the support of a thorough and efficient school system and not to confer special privileges upon employes whereby they may be securely employed, free from control of the board of school directors and of the county superintendent. In order that a teacher may be employed by a valid contract there are two essentials: 1. The appointment must be made and the salary fixed by appropriate action of the board of school directors duly recorded in the minutes. 2. The contract prescribed by the School Code must be executed. Plaintiff relies upon a written form of contract executed for the year 1946-47. However, this contract was not entered into in pursuance of any action taken by the board of school directors and recorded in the minutes: Ricapito v. Bethlehem School District, supra. It appears that inadvertently the secretary of the school board tendered such a contract to plaintiff. Counsel for plaintiff apparently realizes the worthlessness of this contract but argued that the execution of such contract was evidence to show that the members of the school board considered plaintiff as a professional teacher within the meaning of the School Code. However, school teacher contracts are not entered into by inference. The parties must comply with the statutory requirements relative to such employment.

*Order*

And now, August 22, 1949, plaintiff's motion to take off the compulsory nonsuit is dismissed at the cost of plaintiff.