## Commonwealth ex rel. *v.* Sunbury School District, Appellant, et al.

Argued April 10, 1939. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn and Stern, JJ.

*Richard Henry Klein*, for appellant.

*Samuel Gubin,* with him *Russell S. Machmer,* for appellee.

OPINION BY MR. JUSTICE DREW, May 15, 1939:

Plaintiff, M. Louise Hetrick, filed a petition for a writ of alternative mandamus commanding the defendant, the Board of Directors of the School District of the City of Sunbury, to acknowledge her as a lawful, duly qualified, professional employee and teacher of music, and to execute a written contract with her as provided by the Teachers' Tenure Act of April 6, 1937, P. L. 213. The Board of School Directors filed an answer admitting that plaintiff had been employed, but averred that she had been employed only as a supply teacher to temporarily fill a vacancy that occurred during the school term, and denied that she was entitled to a contract under the Tenure Act. The court below found that plaintiff was a regular, full-time, professional employee within the meaning of the Act and entered a decree ordering the defendant to execute the contract prayed for. From that decree defendant has appealed.

The vacancy which plaintiff was engaged to fill occurred during the 1937-8 school term by reason of the resignation of the regular music teacher. At a meeting of the Board of School Directors, held October 29, 1937, plaintiff was selected to temporarily fill that vacancy. The minute of the Board, as recorded, reads: "It was moved by Mr. Glosser that M. Louise Hetrick be selected as supply teacher in Junior High School Music for the remainder of the 1937-8 school term." The motion was seconded and carried by the affirmative vote of all the directors. On November 1, 1937, she entered upon her duties and taught continuously for the remainder of the school term, ending June 3, 1938. It was not until after the termination of the first semester that she asked for a permanent contract, at which time the secretary reported her request to the Board, which, as the minutes show, took the following action on April 11, 1938:

"Miss Louise Hetrick, who had been doing substitute teaching . . . made application for a regular position . . . the Secretary was authorized to advise her that her services would not be required after June 3, 1938, and it was not the intention of the Board to elect her as a regular teacher." Later, a meeting on June 20, 1938, the Board passed the following resolution: ". . . that Louise Hetrick be released as a substitute teacher in Junior High School as of July 1, 1938; she having had no contract as a teacher." She received prompt notice in writing of this action. The following August her first formal written demand for a contract proved unavailing and when her services were refused at the beginning of the next term, she thereupon brought this action.

According to the minutes of the School Board, the plaintiff was selected as a supply teacher for the balance of a school term, and not permanently. "The action of the board is the basis of liability of the school district. When it is lacking, no recovery can be had": *Parnell v. School Board of Clymer Borough*, 99 Pa. Superior Ct. 281, 285. The court below found as a fact that the recited minutes were correct; and found as a conclusion of law that the recorded minutes of the Board were the only evidence of the employment of the plaintiff if fraud was not shown; and concluded by finding that "there is absence of fraud in this controversy."

In order to establish a valid appointment, a teacher is required to show the affirmative vote of a majority of the board, duly recorded on the minutes, showing how each voted: *Com. ex rel. Ake v. Blough*, 330 Pa. 590. It follows that if plaintiff could be said to have had any contract at all with the School District, her right to prevail depends upon the action of the Board, of which the minutes are the best evidence: *Whitehead v. North H. Sch. D.*, 145 Pa. 418; *McCrea v. Pine Twp. School Dist.*, 145 Pa. 550; *Roland v. Reading School Dist. (1)*, 161 Pa. 102; *Toye v. Exeter Borough School Dist.*, 225

Pa. 236; *Costello v. School Dist.*, 241 Pa. 179. The minutes of the meeting at which she was selected show that Miss Hetrick was appointed "supply teacher . . . for the remainder of the 1937-8 term." Section 1 of the Tenure Act defines the term "professional employe" as including "any *regular* full-time employe of a school district who is duly certified as a teacher." (Italics added.) The word "regular" cannot reasonably be construed to include one who is elected as a temporary supply teacher and whose employment is definitely limited to the completion of the then school term. It is impossible to believe that the legislature could intend that such a temporary assignment, specifically limited as to duration, should have the effect of a permanent appointment.

The plain and usual meaning of the word "supply" is substitute.[1] The word connotes a temporary appointment, rather than the *"regular"* status which falls within the purview of the Tenure Act. The court below based its conclusion that plaintiff was a regular teacher upon evidence, extraneous from the minutes, of certain actions taken by various school officials which purported to enlarge plaintiff's status from that of a "supply teacher" for a limited period to that of a regular employee. It is clear, however, that this finding cannot be sustained, since proof of plaintiff's appointment is the minutes, and the terms of her selection cannot be supplemented or enlarged by extraneous evidence or by the actions or declarations of the officials of the School District: *School Dist. of Denniston Twp. v. Padden*, 89 Pa. 395; *Dyberry School Dist. v. Mercer*, 115 Pa. 559. Where the minutes characterize a position as "temporary," "substitute" or "supply," the teacher is bound

---

[1] The definition of the word "supply" to be found in the New Standard Dictionary, published by Funk & Wagnalls Co. in 1936 is as follows: "One who supplies a place or serves instead of another; a substitute: said specifically of a clergyman who occupies a pulpit temporarily."

to know that he does not enjoy the legislatively conferred safeguards assured to one who holds a permanent, regular position, and cannot claim that he was deceived into believing otherwise: *Hazen v. Board of Education of City of New York*, 111 N. Y. S. 337.

The fundamental policy of our public school system is to obtain the best educational facilities for the children of the Commonwealth. To this end must be subordinated all personal and partisan considerations: *Walker's Appeal*, 332 Pa. 488. The duty of devising methods by which this important obligation can be discharged devolves upon the school boards. They must have the right and power, in the exercise of a wise discretion, to determine the manner of filling all vacancies in the teaching staff—whether by immediately electing a person known to be qualified to fill the place permanently or by temporarily appointing a supply or substitute person upon probation. It is obvious that it is frequently desirable for school boards to hire teachers upon probation to make certain that whoever is ultimately selected for the permanent position is qualified and efficient. Such a policy must not be discouraged. Of all the duties of school boards the selection of teachers is perhaps the most important. The success of the school depends upon the efficiency of the teachers. In the absence of clear legislative mandate, we will not curtail the efficient conduct of an educational program by interfering with the legitimate exercise of the sound discretion of a school board in the manner of filling vacancies. As was said by the present Chief Justice in *Hibbs v. Arensberg*, 276 Pa. 24, 26: "Executive officers of municipal and school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise . . . When their actions are challenged, the burden . . . rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused."

If a school board cannot hire a substitute teacher on probation except by incurring the obligation of permanent tenure, it would mean that when a teacher died the school board would be forced to leave the pupils without a teacher until a regular one could be found and hired, because any substitute sent in for a day or a week would become a regular teacher and entitled to a permanent contract. Such a result would be absurd, because no sensible school management could prosper under it. As was pointed out in *Taggart v. School Dist. No. 1,* 96 Or. 422, 436, if every substitute school teacher became automatically a regular teacher under tenure, it would follow that at the end of the school year a district would have more teachers than positions and would be compelled to pay these extra teachers for doing nothing. All legislation must be construed as intending to favor the public interest; and when it conflicts with private interests, the public interest to be primarily served is the dominating one, not that of the individual: *Walker's Appeal,* supra.

As we have already stated, the purpose of the Tenure Act was "to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction," but it was not the intention of the legislature "to have the Tenure Act interfere with the control of school policy": *Ehret v. Kulpmont Boro. School Dist.,* 333 Pa. 518. If the Act were construed to eliminate the possibility of employing supply teachers under the circumstances of the instant case, the district would be unduly restricted in its power to secure capable and competent teachers and the discretion of the board over its educational policies would be largely eliminated. The Act does not permit an interpretation which would result in permanent tenure being secured at the sacrifice of sensible school administration.

This conclusion is not in conflict with our decision in *Jones v. Kulpmont Borough School District,* 333 Pa. 581, where we considered a *"permanent* supply teacher" to be within the protection of the Tenure Act. In that case, as the description indicates, the teacher's position was a permanent one. She was not employed to fill a vacancy temporarily or until the board could determine her fitness for the position. On the contrary, she was permanently employed to conduct classes whenever other teachers were absent through illness or other incapacities. It is indispensable to the efficient management of schools in large districts to have on hand one or more permanently employed supply teachers. There is a vast difference between one permanently employed to be present at all times to take over classes in the absence of other teachers and one temporarily employed for the sole purpose of completing an unexpired term.

Plaintiff's contention that she is entitled to a contract since the Board in hiring her as a supply teacher was merely attempting to evade the Tenure Act is without merit. The election of plaintiff as a supply teacher was not a mere subterfuge to escape the obligations imposed by the Act; it was precisely what it purported to be—the creation of a temporary relationship not prohibited by the Act. Plaintiff cannot complain when the Board has availed itself of the opportunity of doing what the law permits: See *Arbuckle's Estate,* 324 Pa. 501, 508.

Decree reversed.