# Fenstermacher's Appeal

*J. Farrell Garvey*, for petitioner.

*Windolph & Mueller*, for school board.

SCHAEFFER, J., August 25, 1939.—This is an appeal by James Fenstermacher, a professional employe, from the decision of the Board of School Directors of the School District of Marietta, Lancaster County, Pa., terminating his existing contract with said district at the end of the 1938-1939 school year. James Fenstermacher, the teacher, was duly notified of such action taken by the board on May 5, 1939, and the specific charges were furnished to him. The latter demanded a hearing, which was held on June 7, 1939. Prior to that hearing he consulted three different lawyers, but no counsel represented him at the hearing before the board of school directors and no denial was made by him of the charges at the hearing. At the hearing in court he was represented by counsel.

Section 1205 of the School Code of May 18, 1911, P. L. 309, as last amended by the Teachers' Tenure Act of April 6, 1937, P. L. 213, sec. 2, relating to the termination of a teacher's contract, provides as follows:

"The only valid causes for termination of a contract in accordance with the provisions of this section shall be —Immorality, incompetency, intemperance, cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe. . . . ."

The main charge against said James Fenstermacher is incompetency as a teacher. Incompetency as used in the School Code of May 18, 1911, P. L. 309, as amended, has a comprehensive meaning. It is not limited to mere lack of scholastic ability as a teacher, but it includes also want of fitness or inability to meet the demands of a position. In Horosko v. Mount Pleasant Township School Dist. et al., 335 Pa. 369, 374, Mr. Justice Linn of the Supreme Court of Pennsylvania affirmed the action of the board of school directors in dismissing a teacher. In his opinion filed on June 19, 1939, he interpreted the meaning of the word "incompetency" as used in the School Code. He said:

"The term 'incompetency' has a 'common and approved usage'. The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C. J., with reference to a number of supporting decisions, it is defined: 'A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty.' . . . Funk & Wagnalls Standard Dictionary defines it as 'General lack of capacity of fitness, or lack of the special qualities required for a particular purpose.' "

As stated by the Supreme Court of this State in Commonwealth ex rel. *v.* Sunbury School Dist. et al., 335 Pa. 6, 12, decided May 15, 1939, ". . . the purpose of the Tenure Act was 'to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction,' but it was not the intention of the legislature 'to have the Tenure Act interfere with the control of school policy' ".

In re Appeal of Raymond Yeich, etc., 6 Schuyl. Reg. 91 (1938), it was decided that when a teacher knowingly persists in not carrying out the instructions of the principal, it is ground for dismissal. The School Code of May 18, 1911, P. L. 309, sec. 2224, which has not been amended, provides:

"Supervision of all matters pertaining to instruction in all the schools, under the direction and subject to the approval of the board of public education, shall be vested in the superintendent of schools, associate superintendents, assistant district superintendents, and school principals. . . . They shall, in conjunction with the school principals, inquire into and supervise all matters relating to the government, courses of study, methods of teaching, discipline, and conduct of all schools in their respective districts".

The minor charges against James Fenstermacher, even if proven by evidence, do not constitute incompetency. However, there is undisputed testimony in this case of a serious nature which justified the action of the board. This evidence relates first to the letter written by James Fenstermacher to the supervising principal, and second, the manner in which the questionnaire was submitted by him to his pupils and their parents. It shows either a lack of knowledge of, or a disregard for, the proper relationship of a teacher to his supervising principal and to his pupils.

In the letter written by James Fenstermacher, the teacher, to Wilmer E. Shue, the supervising principal, on October 11, 1938, about five weeks after school opened, he said, inter alia:

"You are very conservative. You do not realize the fact that the school is becoming more democratic. .... This far I could easily see the present student body has been brought up on the old fashioned way. They know nothing of social control thru reasoning. It seems as tho they weren't educated along virtues so necessary for a democratic life. They have been brought up amid circumstances which will prove fruitful for rebellion after their leaving of school. They have been thwarted. They have been brought into conflict. They know nothing of self-government and its relation to school-life as well as future community life. . . . They have been used to your method which should be discarded to be superseded by something based on the 'individual pupil' learning rather than your 'subjective' methods. . . . Another thing, Mr. Shue, your educational principles are very inconsistent. They are in conflict. . . . don't forget, 'Formal education is to become as least formal as possible.' . . . Your criticisms are only subjective, lacking authority. . . . I am open to suggestions; if they are satisfactory to my philosophy of education on which I was brought up, I will accept them and use them. Otherwise, I will cast them aside. . . . My methods of education have been altered by your way of thinking. Methods which would have made Marietta stand out, I had to discard. At present Marietta has methods which show lack of progressiveness, and which can be found in any common school system."

On May 19, 1939, without permission of the school board or supervising principal, James Fenstermacher distributed a questionnaire during school hours to all his pupils and asked them to sign them in his presence at his desk. James Fenstermacher testified that before the pupils filled in the questionnaire he asked for their honest

opinions and that he wanted the same opinion from their parents. The questionnaire submitted to the pupils for their vote and signature was: "Do you favor the retention of my services as teacher in the Marietta High School?" The one submitted to the parents was the same except that it contained also "as your child does."

Popularity among pupils does not necessarily prove competency. The ablest and strictest teacher may be the most unpopular one.

The county superintendent of schools, the assistant county superintendent of schools, and the supervising principal testified that in their opinion James Fenstermacher as a teacher in the Marietta High School was incompetent. Wilmer E. Shue, supervising principal, is no longer connected with the School District of Marietta, having resigned and accepted a better-paying position in Delaware County. He has had about 10 years' experience as a teacher. The superintendents base their opinion largely upon the testimony submitted in court. The policy of the public schools in Lancaster County, under the supervision of Arthur P. Mylin, county superintendent of schools, is set forth in his testimony as follows: "I told him that the supervising principal of a school was the professional head of that school, and that it was not the judgment of a teacher as to whether or not he was right or wrong; that the board would take care of that; and that I assumed he would do like a good soldier would do, carry out orders and carry them out to the best of his professional ability. He agreed with me on that." He also testified that he had a previous interview with James Fenstermacher, particularly about the letter in question.

It is true that James Fenstermacher's pupils passed their examinations. His scholastic ability is not impugned. His difficulty with the board and with the supervising principal of the Marietta School District is due largely to his failure to adapt himself to the requirements of the

"school policy" of the Marietta School District. James Fenstermacher appeared before two meetings of the board held in October 1938, and May 1939, when he admitted that he had made mistakes but asked for another chance.

And now, August 25, 1939, upon careful consideration of the testimony in this case heard on the appeal of James Fenstermacher from the action of the Board of School Directors of the School District of Marietta in refusing reëlection of James Fenstermacher as a professional employe and in terminating his existing contract as such employe with said school district, as of the end of the present school year, the court affirms the action of said board of school directors, and the said James Fenstermacher is hereby refused reëlection as a professional employe of said School District of Marietta.