# Augustine v. Turkeyfoot Valley Area School District (No. 1)

*William K. Eckel,* for appellant.

*C. Gregory Frantz* and *Eugene E. Fike, II,* contra.

COFFROTH, *P.J.*, June 1, 1977—Appellant, a teacher in the appellee school district, has filed this appeal under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11301 et seq., from his dismissal by the school board, after hearing, because of unsatisfactory rating as a temporary professional employe. He seeks an order compelling the board to give him a permanent contract as a tenured professional employe.

The case involves the following questions:

(1) Whether appellant's constitutional right to an impartial tribunal was denied because the school board had during the period of his employment received ex parte reports concerning his teaching performance and had sought his resignation;

(2) Whether the board's denial of the request of appellant's counsel for pre-hearing interrogation of board members as on voir dire concerning bias was improper;

(3) Whether unsatisfactory ratings are invalid for want of an anecdotal record;

(4) Whether, because of the foregoing matters and the failure of the board at the hearing to support the unsatisfactory ratings by substantial evidence, and the fact that appellant was given four satisfactory ratings, the board acted in bad faith or arbitrarily or capriciously in dismissing appellant.

## FACTS

Appellant was employed by the district for the 1973-74 and 1974-75 school years as an art teacher.

He was given a satisfactory rating for both semesters of the 1973-74 year and for the first semester of the 1974-75 year, but was rated unsatisfactory for the second semester of the latter year. Notwithstanding the unsatisfactory rating, appellant was given employment for the 1975-76 school year, with the understanding that tenure was not conferred and would depend upon whether appellant's performance improved. He was rated satisfactory for the first semester of the 1975-76 year but unsatisfactory for the second semester of that year, and the dismissal resulted.

The ratings were made on rating cards prescribed by the State Department of Education, which are based on evaluation sheets; both are prepared by the person doing the rating and are in evidence. After each evaluation, the administration met with appellant and reviewed the ratings. Appellant's performance had also been discussed with him at other times by administrators, and by them with the board, and appellant also appeared before the board for such a discussion during the summer of 1975. At the board meeting on May 3, 1976, at the suggestion of one or more members, it was agreed that the personnel committee of the board and the superintendent should meet with appellant to discuss his performance and to request or suggest his resignation. That meeting was held May 5 and by letter of May 6 the chairman of the committee and the superintendent confirmed that the board felt that appellant's performance had not been satisfactory and requested his resignation, which was not given. On May 27, the superintendent formally evaluated appellant's performance and rated him unsatisfactory, of which he was notified.

Appellant was later notified of a hearing to be held on July 13 for the purpose of deciding whether

or not he should be dismissed. The hearing was continued by agreement of the parties until July 27 when it was held. On August 23, 1976, the board dismissed appellant because of the unsatisfactory ratings.

At the hearing, the only witness called to testify was Mr. Knight, superintendent. Appellant elected not to take the stand, and declined to submit to cross-examination by administration counsel, but did answer several questions by board members relating only to his receipt of the ratings and some peripheral matters.[1]

## DISCUSSION

### Right of Hearing and Appeal

Appellant in his brief and argument concedes that under the Public School Code of March 10, 1949, P.L. 30, his status is that of temporary professional employe who seeks and claims to be entitled to professional employe status. Accordingly, these proceedings are properly taken under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11301, because no other statute affords appellant any right to a board hearing or to an appeal from dismissal. The Administrative Agency Law of June 4, 1945, P.L. 1388, 71 P.S. §1710.1 et seq., does not cover school districts: Smith v. Harmony Area School Dist., 16 Pa. Commonwealth Ct. 175, 177, 328 A. 2d 883 (1974). The Public School Code grants neither hearing nor appeal to a temporary professional employe. See Young v. Littlestown Area School Dist., 24 Pa. Commonwealth Ct. 621, 628, 328 A. 2d 120 (1976); McKelvey v. Colonial

---

1. Whether the administration could call appellant as for cross-examination under the Act of 1887, 28 P.S. §381, has not been raised.

School District, 22 Pa. Commonwealth Ct. 207, 348 A. 2d 445 (1975). The provisions for appeal in the Public School Code apply only to professional employes. See Smith v. Harmony Area, supra, 177; Brentwood Borough School District Appeal, 439 Pa. 256, 259, 267 A. 2d 848 (1970); Public School Code of March 10, 1949, P.L. 30, 24 P.S. §11-1127 et seq. Prior to enactment of the Local Agency Law, the sole avenue available to the temporary professional employe for judicial review of dismissal was an action of mandamus, if the employe's right was clear and if he had no other adequate remedy. See Young v. Littlestown Area, supra; Elias v. Board of School Directors, 421 Pa. 260, 218 A. 2d (1966); Travis v. Teter, 370 Pa. 326, 87 A. 2d 177 (1952). Now, the temporary professional employe's right to hearing and appeal are secured by the Local Agency Law: Young v. Littlestown Area School District, supra; Kudasik v. Port Alleghany School District, 23 Pa. Commonwealth Ct. 208, 350 A. 2d 887 (1976); McKelvey v. Colonial School District, supra. The Local Agency Law was intended to supply a remedy in cases where no other statute supplied it: Shaulis v. Indian Lake Borough, 32 Somerset 271, 280 (1976). Since the remedy is adequate under that act, mandamus is no longer available. See Young v. Littlestown Area, supra, 628; Smith v. Harmony Area, supra, 177; Hutnik v. Duquesne School District, 8 Pa. Commonwealth Ct. 387, 302 A. 2d 873 (1973).[2]

---

2. As to the constitutional right of a public employe to notice and hearing before being dismissed during the term of his employment contract: see Board of Regents v. Roth, 33 L.Ed. 2d 548 (1972), and Mt. Healthy City School Dist. Bd. of

## Scope of Review

Section 8 of the Local Agency Law, 53 P.S. §11308, defines the scope of our review in this case as follows:

"After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of this Act have been violated in the proceeding before the agency, or that any finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence."

In the present case, appellant asserts two grounds for relief: (1) violation of his constitutional right to an impartial tribunal, and (2) the dismissal is not supported by substantial evidence. We shall consider these in order.

### Violation of Constitutional Rights

Administrative tribunals, like judicial tribunals, must provide fair hearings in accordance with principles of due process of law, must be unbiased and must avoid the appearance of bias: Donnon v. Downingtown Civil Service Commission, 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971). Appellant's charge of bias in this case is based upon the following facts:

(1) The board members had received from the

---

Ed. v. Doyle, 50 L.Ed. 2d 471, 481 (1977); see also Tishock v. Tohickon Valley Joint School Board, 181 Pa. Superior Ct. 278, 124 A. 2d 148 (1956).

administration, from time to time during appellant's employment, ex parte statements concerning his job performance, and

(2) The board authorized the personnel committee of the board to meet with appellant and to seek his resignation prior to the final unsatisfactory rating.

Appellant expects too much of a school board that it hold itself aloof from information concerning teacher performance, and at the same time perform its statutory obligation to administer the public school system: 24 P.S. §3-301 and §5-501. The school board is merely the agent of the Commonwealth in maintaining and supporting "a thorough and efficient system of public education" as directed in article 3, sec. 14, of the Pennsylvania Constitution. Therefore, "school boards have traditionally been given by the Legislature, under constitutional mandates, broad inherent managerial powers to operate the public schools and to determine policy relative thereto." Pennsylvania Labor Relations Board v. State College Area School District, 9 Pa. Commonwealth Ct. 229, 240, 306 A. 2d 404 (1973), reversed on other grounds in 461 Pa. 494, 337 A. 2d 262 (1975), where the Supreme Court said that ". . . the true public interest is the effective and efficient operation of public employment. . ." (p. 505).

Performance of the school board's managerial and supervisory functions in the operation of the public schools must entail continued and close board member involvement with teacher performance. By necessity, school directors cannot acquire the knowledge of teacher performance essential to carrying on the board's managerial and supervisory duties, and at the same time be devoid

of such knowledge when sitting as members of the tribunal which adjudicated teacher dismissal.

The system of combining in the school board both managerial and quasi-judicial functions with respect to the same employes is inherently incapable of the degree of impartiality that appellant contends for and as may be expected of a more detached judicial body. In a teacher dismissal proceeding, the school board "can never be totally unbiased." Brentwood Appeal, supra, 262-3, also quoted in Board of Education v. Philadelphia Federation of Teachers, 464 Pa. 92, 104, 346 A. 2d 35 (1975). What we are dealing with is *degree* of detachment. Either we must accept a lesser degree of detachment in the school board than is required of a court, or take from the board its adjudicatory functions. Our society, with judicial approval, has chosen the former alternative. Although the courts have insisted that the school board may not fill the roles of both prosecution and adjudication, as is well illustrated in Owens v. Vo-Tech, 31 Somerset 38 (1976), nevertheless the courts recognize that lay persons of intelligence and integrity are capable of perceiving the difference between facts gained and opinions held before hearing, and the duty of suspending and setting aside those acquisitions when called upon to make a decision of importance on the basis of evidence produced in an adversary hearing.[3]

---

3. The same principle is recognized in the selection of impartial juries in courts of record. In Com. v. Johnson, 452 Pa. 130, 136, 305 A. 2d 5 (1973), the court said:

"The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside

Judge Shaulis analyzed this rationale thoroughly and adopted it in Owens v. Vo-Tech (No. 2), 34 Somerset 101 (1977). We will not repeat here all that was said there, nor review all of the authorities there examined; reference to the opinion by the reader should suffice. We shall here repeat only the court's statement in Spruce Hill Township School Dist. Bd. of Directors v. Bryner, 148 Pa. Superior Ct. 549, 556, 25 A. 2d 745 (1942), which is cogently illustrative of the principles we are discussing:

"The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made. That a member of the board had an opinion at the time the charges were preferred against appellant would not disqualify him from participating in a hearing on those charges, or invalidate the proceedings. We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions." The foregoing was quoted with approval in Flannery Appeal, 406 Pa. 515, 521-22, 178 A. 2d 751 (1962). See also Rayne v. Edgewood

---

those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors." In the present case, the administration as prosecutor and the board as tribunal had separate counsel at the hearing.

School Dist., 19 Pa. Commonwealth Ct. 353, 339 A. 2d 151 (1975).

In the instant case, there is no evidence of bias in the school board in the nature of any opinion so fixed and unchangeable as to deprive any member of the ability to do his duty fairly in the adjudication. In fact, as we shall now see, the evidence is to the contrary.

As to the claimed right of voir dire, no Pennsylvania authority has been brought to our attention which treats the issue. Counsel for appellant cites only Osborne v. Bullitt County Board of Education, 415 S.W. 2d 607, 610 (Ky. 1967), where the court said:

"Appellant's next allegation of error in the proceedings is the refusal of the members of the school board to be called and examined upon their possible prejudice against him. We believe they should have submitted to such examination. Most certainly appellant was entitled to show in the record that those who were responsible for his discharge were motivated by improper and unfounded reasons."

We are in partial agreement with the Kentucky Court. A brief voir dire is proper, not to determine the motivation and reasons for discharge, but to ascertain whether any board member has such a fixed or unchangeable opinion of the case that it cannot be set aside in favor of a decision based solely on the facts presented at the hearing, and to serve as an instruction to the board members that such is their duty. Such inquiries are especially needed because of the dual nature of the board's function as previously mentioned. The extent of voir dire should depend upon the degree to which there are indications of pre-hearing involvement,

and it need not be conducted by counsel for the adversaries. It may appropriately be conducted by board counsel, much as voir dire in a court of record may be conducted by the judge, and questions may be directed to the panel as a whole or to individual board members as circumstances may require. See 50 C.J.S. §276, 1055, and Pa.R.Crim.P. 1106.

Accordingly, in quasi-judicial hearings before school boards, requests for such limited pre-hearing voir dire should ordinarily be granted. Whether refusal is reversible error should depend upon the circumstances of the case, and need not automatically follow. As stated in Donnon v. Downingtown Civil Service Commission, supra, 369:

". . . [T]he question before us is: Absent a showing of actual bias, did the municipality or its agency provide reasonable procedural safeguards to assure the protection of the respondent's right to a fair and unbiased adjudication? No hard and fast ground rules can be established to guide parties. Truly each factual situation calls for a separate determination first and hopefully finally at the administrative level, and lastly, by judicial decree."

In the present case counsel for the board denied appellant's request for individual interrogation of board members by counsel for appellant; but he did request the board members, addressing them as a group, to "disqualify yourselves if you think that you're biased or not impartial or if you think you cannot decide this case on the evidence and testimony that's going to be presented here tonight." He then declared a recess for the board members to consider the request, after which the group was asked: "Does any board member feel he should be disqualified?" to which there was no affirmative

reply. He then inquired: "Do you feel you can decide the case fairly and based upon the evidence that we hear tonight?" To this all board members responded: "Yes." Under these facts, we think the procedure was adequate to insure a fair hearing and decision. Compare Delisio v. Ellwood City Area School Dist., 70 D. & C. 2d 524, 530 (1975).

Also, we see no impropriety in the pre-hearing request to appellant by the board that he resign in view of his teaching performance. In employer-employe relationships, the employe is frequently offered that alternative to a discharge. That course of action does not cast a cloud upon the subsequent unsatisfactory rating and discharge as does the practice of offering a satisfactory rating in return for a resignation, as was condemned in Owens v. Vo-Tech, 31 Somerset 38, supra. On the contrary, the suggestion of resignation here was consistent with the accumulated indications from administrative observation that appellant's service was unsatisfactory, and consistent with the administrative and supervisory functions of school boards, and not inconsistent with the capacity of board members so engaged to afford appellant a fair and unbiased hearing and adjudication. Compare Am. Fed. St., Co. & Mun. Employes v. Com., 24 Pa. Commonwealth Ct. 162, 354 A. 2d 1 (1976).

Appellant was afforded due process of law in the proceedings before the school board.

### Sufficiency of Evidence Supporting Dismissal

It is vital to realize that appellant was dismissed for *unsatisfactory rating,* not for *incompetency,* even though the rating is based upon performance which is alleged to have been unsatisfactory or incompetent. The distinction between incompetency

based on unsatisfactory rating, and unsatisfactory rating based on incompetency, is a legal one, and produces differences in legal procedures and proof requirements. It is derived from the provisions of the Public School Code which establish differences between a *professional employe* (who has tenure status) and a *temporary professional employe* (who lacks tenure status), which give rise to the following legal propositions:

(1) Each school district is required to maintain an efficiency rating system for evaluating specified professional skills or qualifications (personality, preparation, technique and pupil reaction) of each employe (both permanent and temporary) in the performance of professional duties: 24 P.S. §§11-1123 and 11-1125.

(2) In order to dismiss a *professional employe* for unsatisfactory performance related to qualifications evaluated in the rating system, the dismissal must be for incompetency under Public School Code section 1122, 24 P.S. §11-1122, which provides as follows:

"The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employee shall be immorality, *incompetency,* intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth . . . [and retirement for age]." (Emphasis added.)[4]

---

4. Incompetency within the meaning of Public School Code section 1122 is a broad term which may embrace conduct and qualifications not involved in the rating system. See Brown's Case, 151 Pa. Superior Ct. 522 (1943), affirmed 347

(3) Although the code in section 1122, supra, by its terms specifies grounds for dismissal only for professional employes, nevertheless a temporary professional employe may also be dismissed for the causes stated in that section. In Johnson v. United Sch. Dist. Joint Sch. Bd., 201 Pa. Superior Ct. 375, 383, 191 A. 2d 897 (1963), the court said:

"It appears to us that a temporary professional employe may be dismissed either by an unsatisfactory rating referred to in §§1108 and 1123, supra, or by the board for reasons set forth in §1122. If a professional employe can be discharged under §1122 and a temporary professional employe cannot be discharged under that section, the teacher who has not acquired tenure by two years service has greater rights than one who has acquired that tenure status. This could not have been the intent of the legislature."

(4) As indicated in the quotation from Johnson, supra, in addition to dismissal for the causes set forth in Public School Code section 1122 (which include incompetency), a temporary professional employe may be dismissed for an unsatisfactory rating for the final four months of the second year of temporary employment, and solely for that reason, absent a showing of bad faith or arbitrary or capricious action by the board: Nicolella v. Trinity Area School District, 444 Pa. 544, 550 (1971); or

---

Pa. 418 (1943), commented on in Thall Appeal, 410 Pa. 222, 229 (1963), involving physical disability: School Dist. of Philadelphia v. Soler, 406 Pa. 168 (1961), refusal to respond to inquiries by superior as to fitness. See also Horosko v. Mt. Pleasant Twp. Sch. Dist., 335 Pa. 369 (1939); Schwer's Appeal, 36 D. & C. 531 (1939); Fenstermacher's Appeal, 36 D. & C. 373 (1939).

action taken in a manner contrary to law: Young v. Littlestown, supra, 631, and 53 P.S. §11308.[5]

(5) In a dismissal proceeding for *incompetency* under the Public School Code section 1122, the district must prove incompetence by producing substantial credible evidence of the specific factual instances of incompetent or unsatisfactory performance of duty. When the incompetency alleged is based on deficiencies covered by the rating system, an essential part of the proof is a valid unsatisfactory rating for the period of time at issue. See Thall Appeal, supra; Coble's Appeal, 61 D. & C. 298 (1947); 24 P.S. §11-1123, providing for use of the ratings, "In determining whether a professional employe shall be dismissed for incompetency . . ."; 24 P.S. §11-1125(a), providing that "No professional employe shall be dismissed under this act unless such rating records have been kept on file. . . ."[6]

(6) In a proceeding for dismissal of a temporary

5. This principle is derived from the provisions of the Public School Code, sec. 1108. Section 1108(b) provides in relevant part that: "A temporary professional employe whose work has been certified . . . during the last four (4) months of the second year of such service as being satisfactory shall thereafter be a 'professional employe'. . . ." Section 1108(a) provides in part that: "No temporary professional employe shall be dismissed unless rated unsatisfactory. . . ." Under these provisions, in order for a temporary professional employe to attain professional employe status (with tenure), he or she must have two full years (four semesters) of service which has been rated satisfactory: Travis v. Teter, 370 Pa. 326, 332 (1952); Acitelli v. Westmont Hilltop, 15 Pa. Commonwealth Ct. 214, 218-19 (1974).

6. As to whether ratings are essential to a dismissal for causes unrelated to the rated skills, see Thall Appeal, supra, 229.

professional employe for unsatisfactory rating under Public School Code section 1108, supra, note [5] (as distinguished from dismissal for incompetency under code section 1122, supra), the employe is not entitled to a trial of his competency: Johnson v. Bd. of Sch. Dir. of McGuffey Sch. Dist., 57 D. & C. 2d 268, 272 (1972). The unsatisfactory rating during the fourth semester is alone enough to sustain the dismissal. See Nicolella v. Trinity Area, supra; Acitelli v. Westmont Hilltop Sch. Dist., 15 Pa. Commonwealth Ct. 214, 219, 325 A. 2d 490 (1974). Although the rating is based upon unsatisfactory performance, no inquiry is made into the specific facts of unsatisfactory performance which underlie the rating, except as may be necessary to determine whether the rating was made in bad faith, arbitrarily or capriciously, or not in accordance with law. See paragraph (4) supra. As stated in Young v. Littlestown, supra, 631:

"A requirement that school authorities should at such hearings bear the burden of proving that the temporary professional employee's performance was not only rated as, but was in fact, unsatisfactory would eradicate the difference between the temporary professional employee refused a regular contract for unsatisfactory performance and the regular professional employee sought to be dismissed for incompetence under Section 1127 of the Public School Code of 1949, 24 P.S. §11-1127."[7]

7. In some of its decisions involving dismissal of a temporary professional employe for unsatisfactory rating, the Commonwealth Court reviewed the record to determine whether incompetency was proved by substantial evidence, as though that were the issue. See Acitelli v. Westmont Hilltop, supra, and Kudasik v. Port Alleghany, supra. The comment in

(7) Accordingly, in a hearing for dismissal of a temporary professional employe for unsatisfactory rating for the fourth semester, the board

". . . should initially offer into the hearing record its records relevant to the contested unsatisfactory rating and consequent dismissal, if the latter resulted. . . . Since the actions of the superintendent and the School Board are entitled to a presumption of regularity, its records so admitted will establish the prima facie validity of the ratings and of any dismissal action based thereon. The temporary professional employee must then carry, as he heretofore was required to do in mandamus, the burden of showing that the ratings or the dismissal were arrived at fraudulently, arbitrarily, capriciously or in a manner contrary to law." Young v. Littlestown, supra, 631.[8]

In effect, a facially regular unsatisfactory rating of a temporary professional employe during the fourth semester of employment may be said to carry

---

Kudasik (211) that the board should "present evidence in support of the reasons for the unsatisfactory rating" seems incorrect. It is not suprising, therefore, that the court in Young v. Littlestown, supra, felt the need for a thorough review of the applicable law (624).

8. The statement in Kasper v. Girard Sch. Dist., 25 Pa. Commonwealth Ct. 552, 361 A. 2d 471, 473 (1976), that at the hearing the district should produce the rating records "and the persons whose observations of the appellant's performance formed their basis" should not be construed as requiring the district to elicit testimony from such persons to prove incompetency or to establish the factual basis of the unsatisfactory rating, but rather to authenticate the records and to be available to the employe for interrogation. Of course, questions of competency can be relevant on the issue of bad faith, arbitrariness or caprice. Compare Nicolella v. Trinity Area, supra.

with it a presumption of unsatisfactory performance, rebuttable by proof of bad faith or arbitrary, capricious or unlawful action on the part of the board.[9]

Appellant's brief states a number of respects in which it is claimed there is not substantial evidence to support the adjudication. One is that the witness produced by the administration "did not even at-

9. This "presumption" substantially states the effect of the traditional presumption of regularity of official acts in cases of this kind, referred to by the court in the quotation from Young v. Littlestown, supra. That court stated (632) that the prescribed procedure of establishing a prima facie case and shifting the burden to appellant on the issues of bad faith, etc., is adopted from that followed in real estate tax assessment appeals; it is the same procedure followed in Larimer's Estate, 29 Somerset 61, 64 (1974).

The presumption of official regularity functions in a real estate tax assessment case somewhat differently than in a case of this kind. There the issue is *actual value* which is inferred from proof of *assessed value* by application of the presumption. Here the issue is *unsatisfactory rating* which is directly proved by rating records without resort to any presumption; the presumption of regularity furnishes the basis for a rebuttable inference that the proved rating was made properly, in good faith and without arbitrariness or caprice, and is therefore meritorious. See Robinson v. Philadelphia, 400 Pa. 80, 86, 161 A. 2d 1 (1960).

As to the operation of the presumption in relation to burdens of proof, see Com. v. Thompson, 27 Somerset 241, 252 et seq. (1971), affirmed per curiam 221 Pa. Superior Ct. 824, 292 A. 2d 425 (1972), allocatur refused, commented on in Com. v. DiFrancesco, 458 Pa. 188, 193, note 3, 329 A. 2d 204 (1974). As to the effect of rebutting evidence upon the presumption, see: Com. v. Thompson, supra, 257-8 and 269; Deitch Co. v. Board of Assessment, 417 Pa. 213, 209 A. 2d 397 (1965); Com. v. Husick, 33 Somerset 60 (1975); Com. v. Milosevich, 28 Somerset 109 (1973); Turney Tax Sale, 30 Somerset 161 (1974).

tempt to explain or justify the ratings." To the extent that this objection implies a duty on the part of the district to prove the facts underlying the ratings in order to evidence unsatisfactory performance, it is not well taken. As previously explained, the district has no such burden of proof; its burden is merely to show valid unsatisfactory ratings for the periods at issue.[10] We can, therefore, make no inquiry into the substantiality of the evidence underlying and supporting the ratings, except to the extent that such evidence might be relevant on the question of bad faith or arbitrary or capricious action.

Appellant's other attacks on the adjudication boil down to these two:

(1) The rating records introduced in evidence at the hearing showing appellant's unsatisfactory ratings are not in accordance with law and are irregular and invalid on their face because they are not accompanied by the required anecdotal records; and

(2) The unsatisfactory ratings and the dismissal adjudication are invalid because the hearing rec-

---

10. The unsatisfactory ratings at issue here are for the fourth and sixth semesters of employment. Ordinarily only a fourth semester unsatisfactory rating (for the last four months of the second year of employment) is required to dismiss a temporary professional employe under Public School Code section 1108, see footnote 5 supra. In the present case, after appellant received such a rating, he was nevertheless hired for a third year as a further trial of his competence and was then rated unsatisfactory for the second semester of the third year (sixth semester of employment). A similar situation occurred in Young v. Littlestown Area, supra, where the court held (632, paragraph (3)) that both unsatisfactory ratings are at issue and contestable in an appeal under the Local Agency Law.

ord shows that they are the result of bad faith and arbitrary and capricious action on the part of the board.

It is questionable whether these objections fall within that portion of section 308 of the Local Agency Law, 53 P.S. §11308(b), that a "finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence" as appellant claims, or whether they really raise legal questions and fall within that portion of section 308 which authorizes reversal if the adjudication is "not in accordance with law." But no question has been raised as to the sufficiency of appellant's assignments of error nor to the manner in which they have been raised, so we will consider the objections as properly raised.

### (1) Anecdotal Records

The sources of the anecdotal record requirement are section 1123 of the Public School Code, provisions of the rating cards, and interpretive court decisions, as follows:

(1) Section 1123 of the code, 24 P.S. §11-1123, provides in relevant part that:

"In determining whether a professional employe shall be dismissed for incompetency, and in rating the services of a temporary professional employe, the professional employe or temporary professional employe shall be rated by an approved rating system. . . in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the

Superintendent of Public Instruction, including representation from county and district superintendents of schools, classroom teachers, school directors, school supervisors, and such other groups or interests as the Superintendent of Public Instruction may deem appropriate." See also code section 1108(a), 24 P.S. §11-1108(a), providing that rating of temporary employes shall be done as provided in code section 1123.[11]

(2) Paragraph 3 of the General Rating provisions of the rating cards provides that: "Ratings should have the support of anecdotal records. In the case of UNSATISFACTORY ratings, such records must be maintained in the office of the superintendent of schools and a copy supplied to the employee immediately after it has been completed."

(3) The meaning of these provisions was first construed judicially in Mulhollen Appeal, 155 Pa. Superior Ct. 587, 39 A. 2d 283 (1944), where the court said, p. 595 et seq.:

"We think one feature of Dr. Stull's testimony calls for comment. The ratings cards, described to some extent in footnote 3, also contain the following instruction: '3. Ratings should have the support of anecdotal records. In the case of unsatisfactory ratings, such anecdotal records must be maintained in the office of the superintendent of schools and a copy supplied to the employe immediately after he has been rated.' When asked whether appellant had been supplied with a copy of the anecdotal records submitted and filed by the assistant

11. The Department of Public Instruction is now the Department of Education, and the Secretary of Public Instruction is now the Secretary of Education: Act of July 23, 1969, P.L. 181, 71 P.S. §1037 et seq.

county superintendents, Dr. Stull replied: 'The answer is no, and the explanation is that item No. 3 of this rating card is not a part of the statute. We have complied with the statute, and item number three constitutes a private record, and the last two lines require something that is incompatible. . . The word "immediately" in the next to the last line and the last line, I maintain is not subject to interpretation; that it does not mean tomorrow or next week; it means now. When we see the work of the teacher, we take notes. There is no original anecdotal record until we get to the office and transcribe our notes and put it into English, making a record. Therefore, it is an impossibility to supply to the employe immediately after he has been rated a copy of the anecdotal record, for it does not exist except in notes. . . We consider that anecdotal report our private property, because the statute does not mention it. We assume that in the absence of statute it is our prerogative to interpret and imply what we think is morally correct.' The fallacious emphasis upon the word 'immediately' was summarily and correctly dispelled by Judge Greer as follows: 'We will dispose of that. "Immediately" in this instance means a reasonable time after you have opportunity to return to your office and make these reports.'

". . .

"As we view it, the dismissal of a professional employee is not the sole objective to be attained by the rating procedure. It is also to be expected that improvement in the ability of such employee with consequent benefit to the pupils will be achieved by bringing to the attention of the professional employee in concrete form such deficiencies as may exist in order that they be remedied.

". . .

"Furthermore, the specifications in the rating

cards are so general in character as to place a professional employee at the mercy of a supervisory official unless required to be substantiated by anecdotal records which are to be supplied to the employee being rated with reasonable promptness after the rating has been made. The requirement that in the case of unsatisfactory ratings such anecdotal records be maintained in the superintendent's office, and a copy supplied to the employees so rated, is a salutary one which should be obeyed."

Mulhollen Appeal, supra, was followed by Mullen v. DuBois Area School District, 436 Pa. 211, 259 A. 877 (1969), which reversed the school board's dismissal of a temporary professional employe for an unsatisfactory rating on the ground that it was capricious and arbitrary. The court there stated, p. 213, note 3: "This rating was itself defective because it was not accompanied by the required anecdotal narrative of Mullen's alleged shortcomings." In English v. North East Board of Ed., 58 Erie 144, the local court, in ordering reinstatement of a temporary professional employe for unsatisfactory rating, held that the failure of the board to use State-approved rating cards and to attach an anecdotal record was a minor ("de minimis") error. On appeal to the Commonwealth Court, the reinstatement was reversed and the case was remanded for a rehearing because the board's attorney acted as prosecutor in the hearing: English v. North East Board of Ed., 22 Pa. Commonwealth Ct. 240, 348 A. 2d 494 (1975). But in the course of its opinion, the Commonwealth Court said, p. 245: "We would, however, caution the Board as to the importance of the anecdotal records

which are to accompany the ratings." In New Castle Sch. Dist. v. Bair, 28 Pa. Commonwealth Ct. 240, 368 A. 2d 345 (1977), the court for several reasons affirmed reinstatement of a professional employe. In doing so, the court quoted paragraph 3 of the General Rating provisions of the rating card and stated: "This lack of anecdotal records in and of itself makes the rating defective." p. 243. The presence of anecdotal records was stressed in Travis v. Teter, 370 Pa. 326, 333, 87 A. 2d 177 (1952), and in Acitelli v. Westmont Hilltop, supra, 220, where dismissals for unsatisfatory ratings were affirmed.

Only one lower court has held the provisions for anecdotal records as directory and therefore excusable, and not mandatory: Goodwin v. Centre County Board of Education, 55 D. & C. 2d 134 (1972); compare Johnson v. McGuffey, supra, 272.

None of the foregoing appellate decisions rests entirely upon an absence of anecdotal records or holds that such absence alone will defeat an unsatisfactory rating. Nevertheless, the plain import of their language so clearly points in that direction, and has been so consistently repeated in decisions of all three of the Pennsylvania appellate courts, that the handwriting is on the wall that an anecdotal record is absolutely essential to a valid unsatisfactory rating, against which Goodwin, supra, cannot prevail.

There are policy considerations which support this conclusion:

(1) The language of paragraph 3 of the General Rating section of the rating card is mandatory in the case of an unsatisfactory rating. It states the general rule that: "Ratings *should* have the support

of anecdotal records." (Emphasis added.) That, of course, establishes a permissive or directory rule which ought to be complied with, not a mandatory one which must be complied with. Compare Smith v. Harmony Area, supra, 180. But the ensuing sentence plainly stated that in the case of *unsatisfactory* rating, anecdotal records *must* be maintained, and creates a mandatory imperative. The contrast in language between the two sentences is vivid.[12]

(2) An anecdote is a brief narrative giving the factual details of a specific incident or event. Without factual details, a rating of professional competence or efficiency is virtually worthless and is little more than epithetical opinion. Without supporting factual detail incompetency cannot be found; and without supporting factual detail an unsatisfactory rating is by definition arbitrary. The essentiality of anecdotal support for an unsatisfactory rating is beyond dispute. An anecdotal *record* of observations of the employe's performance on specific dates and times, and of the factual details of such observations, made contemporaneously with the observations while they are fresh in mind, is so important and so far superior in effectiveness and reliability to any later recital or documentation made for purposes of litigation, as to be worthy of a stringent rule mandating the former.

We can think of nothing more important to the proper functioning of the public schools than the

---

12. Whether the direction on the rating card that a copy of the anecdotal record be immediately supplied to the employe is mandatory or directory has not been directly raised, but we do not consider that omission fatal in the absence of prejudice to the employe which is not shown here.

selection and retention of competent teachers, and the discharge of those found incompetent. "Of all the duties of school boards the selection of teachers is perhaps the most important. The success of the school depends upon the efficiency of the teachers." Com. ex rel. Hetrick v. Sunbury School Dist., 335 Pa. 6, 11, 6 A. 2d 279 (1939). Even the tenure provisions of the Public School Code are intended for the benefit of the school system, in attracting and holding an efficient teaching faculty, and preventing the dismissal of capable teachers without cause: Teachers' Tenure Act Cases, 329 Pa. 213, 231, 197 Atl. 344 (1938). Although tenure protects the teacher, that is not its primary purpose. As the court said in Johnson v. United, supra, 378-9:

"Public schools are operated for the students and not for the officers and employes. All of the many *dedicated* teachers of this Commonwealth live by this tenet. It has been recognized in many cases as a basic principle of law.

" 'The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth.' . . . It was the intention of the legislature to subordinate all other considerations to this policy. . . . The teacher tenure provisions must be considered in light of this fundamental public policy." (Citations omitted.)

Securing the justified discharge of the incapable, and avoiding the unjustified discharge of the capable, are of equal importance to a good school system, and both are primarily secured in judicial or quasi-judicial proceedings which depend entirely upon the production of reliable evidence. The documentation and preservation of such evidence in

the form of anecdotal records supporting unsatisfactory ratings is so intimately essential to the quality of the system, that the provision for it must be regarded as mandatory.

The predictable consequence of holding that the provision for anecdotal records is merely permissive or directory is bound to be widespread breach of the requirement, except perhaps when thought to advance the wishes of the administration. Such cavalier observance is sure to defeat the salutary goals of tenure, to the harm of the school system. That being so, the requirement of anecdotal records must be held mandatory. See Prichard v. Willistown Township School District, 394 Pa. 489, 147 A. 2d 380 (1959).

Both parties concede that the proper official rating cards were used in this case. They contain the same regulation requiring anecdotal records as in the other cases we have been discussing.[13]

In the present case, no anecdotal record accompanies the rating. All of the rating records state conclusions only which are the opinions of the observers, without any documented supporting factual data to inform the board or a court or the teacher in question of the grounds for the rating. Such an anecdotal record would be of great value to

13. The regulation apparently has not been filed or published pursuant to the Pennsylvania Documents Act of July 9, 1976, P.L. 877, 45 Pa.C.S.A. §501 et seq. That omission does not render the regulation ineffective as to any person who has actual knowledge of the regulation, as is true of the board in the instant case: 45 Pa.C.S.A. §903(a); Com. v. Katzenberg, 241 Pa. Superior Ct. 391, 361 A. 2d 731 (1976). Accordingly, the regulation has the binding effect of statute: 1 P.L.E. §35, 285. Editor's note: Compare Centennial School District v. Com., 31 Pa. Commonwealth Ct. 307, 376 A. 2d 302 (1977).

the board and the administration in evaluating an unsatisfactory rating: Acitelli v. Westmont Hilltop, supra, 220. It appears from the evidence at the hearing that appellant was observed by two administrators: Mr. Knight, the high school principal, later and now superintendent, and Mr. Landi, high school principal (no longer with the district). Only Mr. Knight testified at the hearing. He made clear that appellant's chief difficulty as teacher was controlling his class and maintaining discipline ("classroom generalship"), but he gave very few details and he had difficulty recalling specifics of relevant times and instances, making it virtually impossible for a detached reviewer without prior knowledge to obtain a clear view of appellant's deficiencies.

The evidence shows that the administration and the board held a number of interviews with appellant concerning his deficiencies, and urged him to improve them, and presumably he was therefore informed of specifics which the record does not reveal. But without the anecdotal record, this court is in the dark as to the specifics that he was informed of.

The fact that appellant declined to testify or otherwise to produce evidence adds to the lack of detail in the record. This is not a criminal case, and appellant therefore is not protected against adverse inferences from his failure to give evidence. We can only conclude that the facts testified to by Mr. Knight are true and that appellant would have confirmed them had he honestly testified: Beers v. Muth, 395 Pa. 624, 151 A. 2d 465 (1959); Dommes v. Zuroski, 350 Pa. 206, 38 A. 2d 73 (1944); Nikitka Estate, 346 Pa. 63, 65, 29 A. 2d 521 (1943); Weigand v. American Stores, 346 Pa. 253, 257, 29

A. 2d 484 (1943); Com. v. Derencin, 26 Somerset 294, 295 (1971); 14 P.L.E. §§30 and 31, 320. Appellant's failure to testify thus gives strong support to Mr. Knight's credibility, but this voucher is not an admission and cannot supply evidentiary omissions which the district has the burden of showing affirmatively: Schwegel v. Goldberg, 209 Pa. Superior Ct. 280, 228 A. 2d 405 (1967). Consequently, although appellant's silence furnishes ground to suspect that appellant's unsatisfactory ratings were justified, it is no substitute for the required documentation in the form of anecdotal narrative, and suspicion is no substitute for evidence.

## (2) Bad Faith, Arbitrariness and Caprice

Appellant's challenge to the adjudication on the ground of bad faith, and arbitrary and capricious action, raises questions of fact upon which appellant has the burden of proof, and the district has no duty of producing substantial evidence to negate bad faith, arbitrariness or caprice. Yet appellant has produced no evidence to carry his burden of proof of these elements. Nevertheless, he is not precluded from attempting to show them by cross-examination of the administration's witnesses or by otherwise exploiting the weaknesses of the administration's case, without producing any evidence of his own. This follows the familiar rule that although a proponent of an issue has no obligation to negate a defense which his opponent has the burden of proving, he must nevertheless produce a case free from evidence which has the effect of establishing the defense; and if his evidence establishes the defense, he defeats himself. See Hughes

v. Chaplin, 389 Pa. 93, 132 A. 2d 200 (1957); Com. v. Gottlieb, 33 Somerset 252, 280, n. [4a] (1976); Matteo v. Sharon Hill Lanes, Inc., 216 Pa. Superior Ct. 188, 191-2, 263 A. 2d 918 (1970); 27 P.L.E. §170.

Appellant claims that the record shows bad faith and arbitrary and capricious action on the part of the board in the following respects:

(1) The administration merely introduced the rating cards and did not attempt to explain or justify the ratings. As already pointed out, the district had no initial burden to produce evidence to support the ratings, except by an anecdotal record.

(2) Appellant received satisfactory ratings for three semesters, then an unsatisfactory rating, then a satisfactory rating, then an unsatisfactory rating. Appellant complains that there is no explanation for the ratings going up and down except that appellant failed to submit to the board's request to resign. These facts alone do not establish bad faith, arbitrariness or caprice. On the contrary, the evidence shows virtually continuous genuine concern by the administration and board about appellant's performance and efforts to bring about improvement. Those facts are inconsistent with bad faith and arbitrariness. Those facts distinguish this case from Mullen v. DuBois Area, supra, where the court stressed the suddenness of the unsatisfactory rating after five prior satisfactory ratings. There the appellant produced testimony as to his capability and the court found that the dismissal was motivated by the employe's union activity. There was substantial justification for the finding in Mullen that the board acted arbitrarily and in bad faith for reasons unconnected with quality of per-

formance. Such evidence is lacking here. This appellant's unsatisfactory ratings were neither sudden nor unexpected, but were foreshadowed by accumulating dissatisfaction on the part of the adminstration with his performance. The final unsatisfactory rating may properly take into consideration appellant's overall development over the course of his employment: Acitelli v. Westmont Hilltop, supra, 220-21; Owens v. Vo-Tech (No. 2), supra, 106. As the court said in Travis v. Teter, supra, 332:

"In spite of appellant's argument to the contrary, it seems hardly necessary to point out that three satisfactory ratings do not of themselves entitle the teacher to four satisfactory ratings; and four, not three, were required for this plaintiff to become entitled to the tenure status of a permanent teacher. In a four lap race the leader at the end of the third lap is often not the winner and sometimes does not even finish."

As already discussed, the board's request for appellant's resignation was not wholly unjustified. Resignation was a rational suggestion in response to growing dissatisfaction with appellant's performance and is consistent with good faith and reasonableness.

The only basis for finding arbitrary action is the absence of an anecdotal record, as previously stated.

## Relief To Be Granted

The district has failed to prove valid unsatisfactory ratings and therefore the dismissal based thereon must be reversed. The question now is: What relief is appellant entitled to?

Appellant claims that he is entitled to tenure and to a permanent professional employe's contract. Counsel for the board contends that such relief is not justified and that if appellant is entitled to relief it is remand to the board with instructions to proceed properly, or in the alternative reinstatement as a temporary professional employe. Counsel for the administration suggests reinstatement as a temporary professional employe, and payment of net loss of income.[14]

Appellant's claim to tenure status is based on Elias v. Board of School Directors, supra, (appeal from this court) in which the court held that an absence of rating is tantamount to a satisfactory rating, which will after two full years of temporary professional employment entitle the employe to a professional employe's contract.[15] But an unsatisfactory rating, even though defective, is not tantamount to no rating at all. There is some logical ground for inferring satisfactory performance from a failure to rate at all, but there is no reason to infer that performance is satisfactory when it has in fact been found unsatisfactory; the validity of this proposition is not altered by reason of the absence of an anecdotal record which renders the rating legally defective. As the court said in Young v. Littlestown, supra, 630, in a somewhat different but related context, ". . . we discern no reason in policy for extending the Elias rule. . . ."

The Local Agency Law authorizes us to "remand

---

14. We see no authority in the Local Agency Law for awarding money damages in an appeal of this kind.

15. This writer was of counsel for appellant in Elias, supra, and Fike, Cascio & Boose, counsel for the board here, was counsel for appellee in Elias.

the proceeding to the local agency for further disposition in accordance with the order of the court." 53 P.S. §11308 (b). To justify remand, we should have some assurance that a valid anecdotal record exists. The anecdotal record requirement contemplates a record made contemporaneously with the observations by the person doing the rating, and cannot be met by a later record prepared for litigation. The following testimony appears in the transcript of the proceeding before the board (64):

"Q. Would there be anything else other than the evaluation sheet, are there any further records or notes of the—for example, when you visited him on May 27th, 1976, or December 5th, 1975, did you keep any further notes that formed a basis for the evaluation or the rating sheets?

"A. No. Very bluntly, in that particular class, I recall it very well and there really wasn't that much to take notes on.

"Q. What about the December 5th class? Apparently December 1975 was a little better.

"A. Right.

"Q. Did you keep any more notes? That's what I'm asking you.

"A. No, not related to this but there are some anecdotal records that are kept."

It appears from this that there may be in existence some contemporaneous anecdotal record, although the testimony suggests that it may be incomplete, and one wonders why it was not presented in the record of the board hearing. In any event, we think the district is entitled to an opportunity to present what it has. Since the principal questions concerning the admissibility and sufficiency of any existing record will be legal ones, it seems more appropriate that a continued hearing

be held before the court, rather than burdening the board with that duty.

Practical considerations also dictate the propriety of this procedure. If the anecdotal record submitted proves to be facially adequate to support the unsatisfactory rating, appellant may want and will be entitled to further hearing to present a defense; for such a hearing we would remand the case to the board. If the record is facially inadequate, the court will grant relief without further hearing. A remand now would unfairly place upon the board the duty of making the legal evaluation of a presented record, which it is ill equipped to do; or else the board and the parties could be directed to assume the record's adequacy (subject to later review by this court on further appeal) and then undergo the further hearing if requested by appellant which would be entirely unnecessary if the record were later held inadequate. Moreover, remand under these circumstances holds little promise of accomplishing a satisfactory conclusion without further appeal. A remand at this point will entail unnecessary delay and perhaps unnecessary work, and is inappropriate relief.

If, at the hearing before the court an adequate anecdotal record is presented, we will either remand for further hearing if appellant requests, or affirm the adjudication. If no anecdotal record, or an inadequate record, is presented to the court, we will reinstate appellant as a temporary professional employe for the next school year during which he will be subject to further rating as provided by law. See dissenting opinion of Justice Roberts in Elias, supra, 268; Official Opinion No. 40 of 1971, Attorney General of Pennsylvania, holding that a contract with a temporary professional employe should be for one year subject to satisfactory performance.

The suggestion of Chief Justice Bell in Elias, 268, and of Justice Nix in Tyler v. Jefferson Co.-DuBois Tech. Sch., 467 Pa. 595, 604, 359 A. 2d 761, 766 (1976), for a remand for proper rating of the fourth (and sixth) semesters, with anecdotal records, is inappropriate at this late date.

## CONCLUSION

We are in full agreement with counsel for the board and administration as to the importance of holding capable teachers in the school system, and of eliminating incapable ones; and that dismissals of incompetent or unsatisfactory teachers should not be impeded for trivial or insubstantial reasons. Thus, in Gabriel v. Trinity Area School District, 22 Pa. Commonwealth Ct. 620, 350 A. 2d 203 (1976), the court refused to reinstate a teacher merely because the rating sheets used differed slightly from the prescribed form. See also Young v. Littlestown Area, 64 D. & C. 2d 703, 706 (1974), affirmed in 24 Pa. Commonwealth Ct. 621, 358 A. 2d 120 (1976). It does not follow, however, that school districts may treat procedures which are vital and important in the dismissal process as trivial or insubstantial. Anecdotal records are vital, and we take this occasion to echo the appellate courts in cautioning school boards and administrators that the omission of anecdotal records in unsatisfactory rating cases will not be countenanced, and that the consequence of such omission must continue to be reinstatement of the dismissed employe. As the Supreme Court appropriately said in Thall Appeal, supra:

"Although we have no doubt that the Board was sincerely motivated in this matter, nevertheless its failure to comply with section 1123 [rating system]

and the regulations passed thereunder cannot be excused. If a dismissal is to be justified on the grounds of incompetency [or an unsatisfactory rating], the legislative provisions for supervising the competency of professional employes must be strictly followed. . . . In fact, the difficult situation before us might well have been avoided had the Board complied with section 1123." (227-28, bracketed words added, citations omitted.)

"We would observe, however, that if school boards continue to ignore the mandate of section 1125 [and of section 1123], the reversal of dismissals, no matter how justified, seems to be the only method available to compel the establishment of [proper] permanent rating systems." (229, bracketed words added, citations omitted.)

### ORDER

Now, June 1, 1977, this case is scheduled for further hearing before the court on Tuesday, June 28, 1977, at 9:30 a.m., for the purpose of affording the school district an opportunity to present an anecdotal record supporting the dismissal, and for further order, consistent with this opinion.